Galloway v. Bradburn.

---

CASE 9—ELECTION CONTEST BY B. W. BRADBURN AGAINST JOHN M. GALLOWAY FOR THE OFFICE OF CIRCUIT JUDGE.—NOVEMBER 16.

## Galloway v. Bradburn.

APPEAL FROM WARREN CIRCUIT COURT—JOHN J OSBORNE, SPECIAL JUDGE.

JUDGMENT FOR CONTESTANT AND CONTESTEE APPEALS.    REVERSED.

APPEAL—BONDS—CONDITIONS—DEFECTIVE BOND—SUBSTITUTION OF SUFFICIENT BOND — STATUTES — ELECTIONS — CONTESTS — EVIDENCE— MUTILATED BALLOTS—PRESUMPTIONS.

1 An appeal bond in an election contest, conditioned that appellant will perform the judgment, if affirmed, does not make the surety responsible for anything more than the surrender of the office if the judgment is affirmed.
2. Under Ky. St. 1903, sec. 1596, subsec. 12, providing that either party to an election contest may appeal to the court of appeals,

Galloway v. Bradburn.

by giving bond "conditioned for the payment of all costs and damages the other party may sustain by reason of the appeal," and further providing that, on the production of the copy of a final judgment, the successful party shall be permitted to qualify or be commissioned, or a writ of new election shall be issued, and that the unsuccessful party shall pay all costs, the bond operates as a supersedeas, so that the appellee can not qualify or, be commissioned until the appeal is determined, and the damages he sustains consist in his being kept out of his office during the pendency of the appeal; and a bond covenanting that the appellant will pay the damages that may be adjudged against him on the appeal, and that he will satisfy and perform the judgment in the event of its affirmance, is not a bond conditioned to pay the damages which appellee sustains within the meaning of the statute, and he is, hence, defective.

3. Civ. Code Prac., sec. 682, authorizing the execution of a sufficient bond in case a bond "provided for by this Code" be adjudged to be defective; section 683, providing that an officer whose duty it is to take a surety "in any bond provided for by this Code" may require an affidavit of qualification; and section 684, providing the qualifications of sureties "in every bond provided for by this Code"—all apply to bonds provided for in the Civil Code of Practice, and have no application to an appeal bond given in an election contest pursuant to the provisions of Ky. St. 1903, sec. 1596, subsec. 12.

4. A re-enactment of an old statute is simply a continuance of the old rule.

5. Act Feb. 12, 1828 (1 Morehead & B. Ky. St., p. 137), regulating appeals and appeal bonds, and providing for the substitution of sufficient bonds in case the bond given be declared defective, is not repealed by Civ. Code Prac., sec. 682, which makes a similar provision for bonds "provided for by this Code," nor by the Code of 1877, which contains the same provision as the Code of 1851, but is still in force as to bonds not provided for by Civil Code of Practice, and hence authorizes the substitution of a sufficient appeal bond in an election contest, where the bond given does not comply with the requirements of Ky. St. 1903, sec. 1596, subsec. 12.

6. Civ. Code Prac., sec. 134, providing that the court may at any time permit a pleading or mistake in any other respect to be amended authorizes the substitution of a sufficient appeal bond in an election contest, where the appeal bond given failed to comply with Ky. St. 1903, sec. 1596, subsec. 12.

7. In an election contest the court may receive evidence that the ballots have been tampered with since they left the hands of the

Galloway v. Bradburn.

election officers, and summarily determine the question, although the time for taking evidence in the case has passed.

8. A certificate of the officers of election is *prima facie* correct, and the presumption of the proper discharge of official duty in counting ballots is not overthrown where the ballots have been tampered with after being deposited in the ballot box.

JOHN R. DU BOSE, J. C. SIMS, SIMS & GRIDER, McKENZIE MOSS, FAIRLEIGH, STRAUS & FAIRLEIGH, FOR APPELLANT.

POINTS AND CITATIONS ON MOTION TO DISMISS APPEAL.

1. The manner, matter and form of pleadings and practice in actions instituted for contesting elections are governed by the rules and provisions of the Code, except as to the time of filing and such other matters as are specifically and explicitly changed by the election statute. Wilson v. Hines, 99 Ky., p. 226; Brown v. McCallum, 76 Iowa, p. 479; Am. & Eng. Ency. of Law, vol. 6, p. 226.

2. A statute is to be regarded as directory, merely, if the directions to accomplish a particular end may be violated and yet the given end be in fact accomplished. Varney v. Justice, 86 Ky., p. 696.

3. Every statute ought to be expounded, not according to the letter, but according to the spirit, and every interpretation that leads to an absurdity ought to be rejected. Bailey v. Commonwealth, 74 Ky., 691.

4. "An appeal bond or undertaking is sufficient where it substantially complies with the statute, although it varies from its language. It is sufficient if its legal effect be to secure to the appellee all the rights contemplated by the statute requiring the bond, and in such cases it need not be amended." Particularly is this true when the statute does not prescribe the form of bond, but simply declares the general object or purpose for which a bond is to be given. Even when conditions are specifically named in the statute for appeal bonds, it is not necessary to use the words of the statute. "It is the substance, and not the form, that must be considered, in determining the sufficiency of such bonds. Moore v. Gorin, 12 Ky., p. 186; Cobb v. Beatty, 19 Ky., 391; Feemster v. Anderson, 22 Ky., p. 537; Ency. of Pleading & Practice, vol. 1, p. 991

5. The form of bond prescribed by sec. 748, of the Code is a sufficient appeal bond under the election statute.

6. The expression in the statute "given to the clerk" should be construed "given before the clerk." Patterson v. Davis, 70 S. W., 47, and Keller v. Ferguson, 73 S. W., 785, criticized.

7. The covenant in the bond as executed that the appellant will perform the judgment appealed from imposes liability upon the sureties for salary received by the appellant during the pending of the appeal. Mahlman v. Williams, 89 Ky., p. 285.

8. Where an appeal bond in any case is defective it may be amended or new bonds executed. Elliott on Appellate Procedure, sec. 377; Shelton v. Wade, 4 Texas, 148; O'Reilley v. Edrington, 6 Otto, 724; Adams v. Settle, 63 Ky., 76; Waters v. Patrick, 64 Ky., 223; Manier v. Lindsay, 66 Ky., 94; Alderson v. Trent, 79 Ky., p. 259.

9. If anything in the form of a bond is executed before the proper officer in the time allowed by law, it is the duty of the court to permit a modification or amendment of it *nunc pro tunc*. Ford v. Commonwealth, 33 Ky., p. 46; Hargis v. Pearce & Son, 70 Ky., 234; Clinton v. Philips, 23 Ky., p. 118; Bush v. Lisle, 86 Ky., p. 504; C. Y. C., vol. 2, p. 847.

## POINTS AND AUTHORITIES FOR APPELLANT ON THE MERITS OF THE CASE.

1. We claim that the ballots and boxes were never introduced, and are not now in evidence. We concede that some boxes and some ballots were examined and counted in and by the lower court, but we contend:

(a) That there is no proof that these were the boxes and ballots actually used and voted in precincts Nos. 19, 22, 25.

(b) That even if they are the boxes and ballots which were used in said precincts they were not put in evidence until after the time allowed by the statute and hence could not be received.

(c) That if they are the boxes and ballots which were used at said election, and were introduced at proper time, their appearance and marks show "they have lost their presumptive purity and can not be relied on as evidence in a contest of judicial inquiry as to the result of this election."

2. There are several links in the chain of evidence which must be clearly proven before the court can consider the ballots at all. (1) The sealing and delivery to the sheriff on the night of the election, (2) the custody and delivery by the sheriff to the county court clerk, (3) the preservation by the county court clerk, (4) the delivery to the court of the boxes properly identified.

We contend that the evidence in this case fails to make clear any of these links. Possibly the first two are established, though it can not be said that either is clearly shown. The third is not only doubtful, but damning. Trunks v. Vincent, 21 R., 475;

Galloway v. Bradburn.

Edwards v. Logan, 24 R., 1099; Major v. Barker, 99 Ky., 305; Anderson v. Likens, 104 Ky., 699; Varney v. Justice, 86 Ky., 596; Bailey v. Hurst, 24 R., 504; Cowan v. Prowse, 83 Ky., 156; People v. Livingston, 97 N. Y.,, 279; Patrick v. Runyon, 20 R., 1914; Hamilton v. Young, 26 R., 447; Ky. Statutes, sec. 1474, 1596a., subsec. 12.

LEWIS McQUOWN, W. S. PRYOR, S. D. HINES, JOHN B. RHODES, WRIGHT & McELROY, B. F. PROCTER, R. L. GREENE, THOS. W. THOMAS and W. B. GAINES, ATTORNEYS FOR APPELLEE.

POINTS AND AUTHORITIES ON MOTION TO DISMISS APPEAL.

1. This court was established by the act approved December 19, 1796, that act contained the following provision in reference to Appeal Bonds:

"The person appealing shall by himself or a responsible person on his behalf in the office of the clerk of the court from whence the appeal was prayed, give bond and sufficient security to be approved by the court, and within a time to be fixed by the court, to the appellee, for the due prosecution of his appeal." 1 M. & B. Statutes, 129.

2. Under this statute the practice in the court was, when no bond was executed within the required time, to strike the case from the docket; where a defective bond was executed to dismiss the appeal with costs. There was no provision in the statute which directed the appeal to be dismissed or case stricken from the docket for these causes. Yet treating the requirement for the bond as a condition to the right of appeal, and the provision of the statute as mandatory, the court established and enforced this rule. Clinton v. Phillips, 7 T. B. Mon., 117.

3. There was no authority in the act referred to, or any contemporaneous act, which authorized the amendment of a defective bond, or the substitution of a valid one for it. But the right of appeal depended on the execution of the required bond in the time and manner prescribed by the statute. Without this the court had no jurisdiction. Hardin v. Owings, 1 Bibb., 214.

4. There being no statute authorizing the substitution of a new bond, or the amendment of a defective one, no rule or practice of this court can be found, or any case decided by it, allowing this to be done until subsequent to the passage of the act of February 12, 1828. By this statute it was provided that among other things that if an appeal bond should be adjudged defective a new bond might forthwith be executed. 1 M. & B. Statutes 137.

This is the origin of the practice or authority of this court in reference to amendment or substitution of bond. The right of the court to do this is purely statutory. So it is in the United States courts, and the courts of every State. The quotations from Elliott on Appellate Procedure found in appellant's brief only state the statutory rule, and not that the appellate courts have any inherent power to allow amendment or substitution.

In fact, the rule is well settled that this can not be done except by statutory authority.

"The time and the court in which defective appeal bonds can be amended, or new bonds filed in lieu thereof, depend entirely upon the provisions of the statutes and rules of court regulating appellate proceedings." Ency. Law & Pro., vol. 2, p. 849.

6. The act of 1828, remained in force until the adoption of the Code of Practice. It is by virtue of this statute alone and not from any inherent power of the court, that from its enactment to the adoption of the Code, errors or mistakes in appeal bonds were corrected in this court.

In lieu of this comprehensive statute, sec. 682, of the Civil Code, was enacted, as follows:

"If a bond provided for by this Code be adjudged to be defective a new and sufficient one may be executed in such reasonable time as the court may fix, with the same effect as if originally executed."

It will be perceived that instead of allowing the substitution of a valid bond for a defective one in all cases, as under the act of 1828, this right is only given in the case of bonds "provided for in this Code." Perkins v. 61 Texas, 190; Ramsey v. Childs, 34 Hun., 329; Putnam v. Boyer, 140 Mass., 235; Robertson v. Robertson, 100 Ky., 700.

## ADDITIONAL POINTS AND AUTHORITIES FOR APPELLEE ON MOTION TO DISMISS APPEAL.

1. The statute of October 24, 1900, regulating the procedure in contested election cases, is exclusive, and unless the appeal bond required by that statute is executed, the court of appeals has no jurisdiction. Lykins v. Steele, 25 Ky. Law Rep., 536; Patterson v. Davis, 24 Ky. Law Rep., 842; Krimm v. Helmbold, 24 Ky. Law Rep., 551; Drinkwine v. City of Eau Claire, 53 N. W., 637; Ex parte Chryslin, 4 Cow., 80; State v. Gerry, 38 L. R. A., 232; Keller v. Ferguson, 34 Ky. Law Rep., 2212.

2. Appeal bonds must comply strictly with the statute. Langley & Langley v. Warner, 3 How. Pr., 363; Cuddleback v. Parks, 2 Greene, 148; Lykins v. Steele, 25 Ky. Law Rep., 536; Patterson v. Davis, 24 Ky. Law Rep.; 842.

Galloway v. Bradburn.

3. The statute of 1892, governing contested elections, and authorizing appeals "as in other cases," was repealed by the act of October 24, 1900, and appeals are now regulated exclusively by the last named statute. The appeal bond must be executed under the statute, and not section 748, of Civil Code. Section 1536, Ky. Statute (Ed. 1894); Section 1596, A Ky. Statute (Last Edition; Krimm v. Helmbold, 24 Ky. Law Rep., 551; Graham v. Graham, 24 Ky. Law Rep., 20; Cowan v. Prowse, 93 Ky., 164; Stine v. Berry, 96 Ky., 66; Freeman v. Cook, 24 Ky. Law Rep., 319;.

4. Section 682, Civil Code, does not authorize the amendment of a defective appeal bond executed in an election contest. The section only applies to bonds provided for by the Code. Sec. 682, Civil Code; Walsh v. People, 12, 111, 77.

5. The appeal bond was required to be executed within thirty days after the final judgment, and could not be amended, or substitute provided therefor after that time. Drinkwine v. City of Eau Claire, 53 N. W., 673; David v. Guich, 70 Pac., 497; (30 Wash., 266.)

POINTS AND AUTHORITIES FOR APPELLEE ON THE MERITS

OF THE CASE.

1. The ballots were admissible in evidence and constitute the best and controlling evidence of the votes cast. Edwards v. Logan, 70 S. W. Rep., p. 853; Hudson v. Solomon, 19 Kansas, p. 177; Schneider v. Bray, 39 Pac. Rep., 327; Hamilton v. Young, 81 S. W. Rep., p. 684.

2. This is conditioned upon proof of their identity and preservation to a reasonable probability of their security against intermeddling. Hudson v. Solomon, 19 Kansas, p. 177; Edwards v. Logan, 70 S. W. Rep., p. 853; Tebbe v. Smith, 29 L. R. A., p. 675; O'Gorman v. Richter, 16 N. W. Rep., p. 418; Catron v. Craw, 46 N. E. Rep., p. 5.

3. If this is established, the burden shifts to the appellant objecting to the ballots as evidence, to show that they have been tampered with, unless the appearance of the ballots themselves is sufficient for that purpose. Edwards v. Logan, 70 S. W. Rep., p. 853; and other authorities last cited.

4. Requirements as to placing the ballots in a sealed envelope, are directory, and can not have the effect of destroying the force of the ballots as the best evidence, if the proof is, they have been properly preserved by the custodian, appointed by law. O'Gorman v. Richter, 16 N. W. Rep., p. 418; Tebbe v. Smith, 29 L. R. A., p. 675.

Galloway v. Bradburn.

5. The proof required of appellant that the ballots have been tampered with is not made by evidence of the officers of election, that they thought they counted correctly, nor is the value of the ballots, as the best evidence destroyed, by the existence of a difference, whether large or small, between the canvass and the recount by the court, nor by the absence of proof of fraud or mistake on the part of the election officers. See authorities cited above.

6 Where by reason of the opportunity afforded election officers to see how the voters stamped their ballots in the booth, the election was practically by open ballot, the said election is invalid. Banks v. Sargent, 104 Ky. Rep., p. 850; Nall v. Tinsley, 21 Ky. Law Rep., p. 1168; Ky Statutes, sec. 1467.

7. Where there was a conspiracy formed by the sheriff of the county and his deputies, by means of a band of desperate men, acting under his authority, to intimidate the Democratic voters at a certain precinct, and in pursuance of such conspiracy, such violence occurred, as must have influenced the election and affected the result, the election is invalid, although no proof is made of any large number of voters who were deterred from voting thereby. 10 Amer. & Eng. Ency. of Law, p. 777.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

At the November election, 1903, appellant and appellee were candidates for circuit judge in the eighth circuit court district. By the official count, as made by the officers of the election, appellant received a majority of 270 votes in the distrct. Appellee filed a petition contesting the election, and on the hearing of that action in the circuit court it was adjudged that appellee had been elected by 342 votes. When the judgment was rendered in the circuit court in favor of appellee, appellant prayed an appeal, and immediately executed an appeal bond. Appellee has entered a motion to dismiss the appeal on the ground that the appeal bond is defective. Appellant, denying that the appeal bond is defective, which he executed before the clerk of the circuit court, tenders in this court a new bond, with same sureties, conforming to the statute, and asks that it be filed as an amended bond. Whether the bond which appellant exe-

cuted before the clerk of the circuit court is defective, and whether, if it is defective, it may be amended or a new bond given now, are the first questions to be determined on the appeal.

The bond executed by appellant, after reciting the judgment entered in the circuit court to the effect that appellee was duly elected, and was entitled to the office on and after the first Monday in January, 1904, concludes with these words: "Now we, John M. Galloway, W. G. Morris and M. M. Ennis, his sureties, do hereby covenant to and with appellee, B. W. Bradburn, that the appellant will pay to appellee all costs and damages that may be adjudged against the appellant on the appeal and also that they will satisfy and perform said judgment above stated in the event that it should be affirmed, and any judgment or order which the court of appeals may render or order to be rendered by the inferior court, not exceeding in amount or value the judgment aforesaid."

The statute regulating contested elections, so far as material here, is as follows: "Within twenty days after the service of summons upon him the contestee shall file his answer, which may consist of a denial of the averments of the petition and may also set up grounds of contest against the contestant, and if grounds are so set up they shall be especially pointed out, and none other shall thereafter be relied upon by said party. A reply may be filed within ten days after the answer or answers are filed, but its affirmative allegations shall be treated as controverted, and no subsequent pleading allowed, and the action shall proceed as an equity action. The evidence in chief for the contestant shall be completed within thirty days after the issues are made up, and the evidence of the contestee completed within twenty days thereafter, and the evidence for contestant in rebuttal

in fifteen days after the contestee has concluded. The action shall have precedence on the trial docket over all other cases. All ballots, poll books, stubs and other papers concerning which there is any ground for contest may be removed to the court in which the action is pending. Either party may appeal from the judgment of the circuit court to the court of appeals by giving bond to the clerk of the circuit court, with good surety, conditioned for the payment of all costs and damages the other party may sustain by reason of the appeal and by filing the record in the clerk's office of the court of appeals, within thirty days after final judgment in the circuit court. And in the court of appeals the case shall be heard and determined as speedily as possible, and shall have precedence over all other cases. . . . On the production of a copy of the final judgment, the successful party shall be permitted to qualify or be commissioned, or a writ of new election shall be issued as the judgment may require. The unsuccessful party shall pay all costs in both courts." Section 1596, subsection 12, Ky. St., 1903.

The final judgment referred to in the statute is the judgment which ends the controversy, and therefore, where an appeal is taken, the appellee would not be permitted to qualify or be commissioned until the appeal is determined. Under the terms of the statute, the supersedeas on the appeal stays the execution of the judgment. The statute therefore requires that the appellant shall give a bond conditioned for the payment of all costs and damages the other party may sustain by reason of the appeal. The damages which the appellee will sustain by reason of the appeal consist in his being kept out of his office during the pendency of the appeal. The bond which appellant executed covenants that the appellant will pay the damages that may be adjudged against him on the appeal. But the damages for keeping

appellee out of the office can not be adjudged, against appellant on the appeal. The bond also covenants that the appellant will satisfy and perform the judgment in the event it is affirmed, but a surety's obligation is limited to the letter of his covenant, and this would make him responsible for nothing more than that appellant would surrender the office to appellee in the event the judgment is affirmed. The bond as executed by appellant is not, therefore, conditioned for the payment of the damages which appellee may sustain by reason of the appeal, and is insufficient, under the statute.

It remains to determine whether the bond may be amended or a new bond given. The statute requires the appellant to give the bond and file the record with the clerk of this court within thirty days after final judgment in the circuit court. In Patterson v. Davis, 70 S. W., 47, 24 Ky. Law Rep., 842, it was held that the execution of a bond within thirty days after the final judgment is a condition precedent to the right of appeal, and that, if the bond is not given, the appeal must be dismissed; but in that case no bond was executed. It will be observed that the statute requires the bond to be executed and the transcript to be filed in this court within thirty days after the judgment in the circuit court. If a transcript filed in time for some reason is defective, as by the statute the case proceeds as an equity action, this court, under section 134, and section 742 of the Civil Code of Practice, might allow the defect to be remedied by the correction of the transcript, although more than thirty days had elapsed. In other words, the jurisdiction of the court would attach by the giving of the bond and the filing of the transcript in this court, and the court, having jurisdiction, under the sections of the Code referred to, could allow the record brought before it to be perfected. But it is insisted that the same rule can not be applied to a defective bond.

Previous to the year 1828 the rule was that if an appeal bond was defective the appeal must be dismissed. Clinton v. Phillips' Adm'r, 7 T. B. Mon., 117; Hardin v. Owings, 1 Bibb, 214. To remedy this the Legislature enacted the following statute:

"An act further to regulate appeals and appeal bonds: approved February 12, 1828.

"Section 1. Be it enacted by the General Assembly of the Commonwealth of Kentucky, that from and after the passage of this act, no appeal bond, or bond executed upon granting an injunction or supersedeas, either in the county, or circuit courts, general court, or court of appeals of this Commonwealth, shall be quashed or set aside for any technicality or other defect upon the face of the bond; but the court shall decide upon such defects and decide whether the same be a good statutory bond or not, and if not, then such court shall dismiss the appeal, or writ of error or other proceeding upon which a supersedeas may have been had, or dissolve the injunction, unless the party appellant, plaintiff or complainant, as the case may be, shall forthwith, upon the defect being announced by the court, and as soon as a bond shall have been prepared, together with good and sufficient security, to be approved of by such court, conditioned as the law in such cases directs, execute another bond to be prepared by the clerk of such court, and the execution of such new bond shall not be a cause of continuance for either party, and the bond so declared defective, may, notwithstanding, be sued upon as a bond at common law."

1 Morehead & B. Ky. St., p. 137.

After this act was passed it was held that where a bond was defective the appeal would not be dismissed, but the appellant would be permitted to execute a good bond in lieu of the original which was defective. Bates v. Courtney's

Galloway v. Bradburn.

Adm'r, 1 Dana, 145. Thus matters stood until the Civil Code of Practice was adopted. That contained this provision: "If a bond provided for by this Code be adjudged to be defective, a new and sufficient one may be executed in such reasonable time as the court may fix, with the same effect as if originally executed." Section 682. Under this provision it has been uniformly held since the adoption of the Code that an appeal will not be dismissed on account of a defective appeal bond if a good bond is executed. Adams v. Settles, 2 Duv., 76; Alderson v. Trent, 79 Ky., 259, 2 R., 248. But it is urged that the bond in this case is not provided for by the Code, but is a bond required to be given under the act further regulating elections. On the other hand, it is insisted that as by section 838 the Code regulates pleading and practice in all civil cases commenced after its adoption, and as by the statute this case must proceed as an equity action, therefore any bond required in this proceeding is a bond provided for by the Code, within the meaning of the statute. While there is some force in this position, the language of the statute is not to be extended by construction beyond its fair and natural meaning. There are a number of bonds provided for by the Code, such as appeal bonds in ordinary cases, bonds to obtain an order or arrest, bonds to obtain or discharge an attachment, bail bonds on an order of arrest, claim and delivery bonds refunding bonds, forthcoming bonds, bonds of indemnity, bonds to infants on sale of real property, bonds in suits on lost writings, bonds to perform a judgment, and the like. When the Code in terms provides for so many bonds, the natural meaning of the words "a bond provided for by this Code" must be that they refer to the bonds which the Code authorizes. To hold otherwise is to deny to the carefully chosen language of the codifiers its natural and ordinary meaning. In ad-

dition to this, section 683 provides that an officer whose
duty it is to take a surety "in any bond provided for by
this Code" may require a person offered as surety to make
affidavit of his qualification. Section 684 provides the quali-
fications of the surety "in every bond provided for by this
Code." It is perfectly manifest that sections 682, 683. and
684, in using precisely the same expression, "bond provided
for by this Code," referred to the same thing. Subsection
7, section 732, provides how the signature to a writing under
the Code shall be made. It has been held that this provision
only applies to writings that are required under the Code.
Meazels v. Martin, 93 Ky., 50, 13 R., 958, 18 S. W., 1028.
It would seem that the same construction should be given
sections 682-684. In other words, the Legislature provided
how the bonds required under the Code must be signed,
and also provided who should be sufficient sureties, how
this should be evidenced, and how the bonds may be amended.
But in all of these provisions it had nothing more in mind
than the bonds required by the Code. The same Legislature
which adopted the Code of Practice in 1851 had before it
the Revised Statutes, which also provided for a number
of bonds; and if the Legislature had had in mind, in fram-
ing the Code, a general provision covering all bonds given
in judicial proceedings it is incredible that it would have
used the language found in sections 682-684, and that this
language should have been readopted without change in
1877. It has never been supposed that the provisions of the
Code as to the sufficiency of sureties in bonds provided by
the Code was applicable to bonds given under the Revised
or General Statutes. Thus, in the numerous cases which
have been brought against county judges for taking insuffi-
cient surety in a guardian's bond, it has uniformly been held
that his liability depends simply on whether he exercised

ordinary care under the facts before him. It can not, therefore, now be held that section 682 applies to the bond in question.

As to all bonds provided by the Code, section 682, is in effect the same as the act of 1828, but as to bonds not provided by the Code a different question is presented. In Madison, I. & P. R. Co. v. Briscoe, 18 B. Mon., 570, this court had under consideration the question whether the act of 1798 (1 Morehead & B. Ky. St., p. 131) giving damages upon the dismissal of an appeal was repealed by the Code of Practice. It was urged that the Code of Practice regulated appeals, and expressly provided for damages upon affirmances, but failed to provide for damages upon dismissals, and therefore by implication repealed the act of 1798. The court, however, held otherwise, and held the act of 1798 in force. Under that opinion, it is clear that the act of 1828, in so far as it applies to bonds not provided for by the Code of Practice, was not repealed by the Code of 1851. The Code of 1877, which is now in force, contains verbatim the same provision as the Code of 1851 on the subject of bonds. The rule is that the re-enactment of an old statute is construed as simply the continuance of the old rule. The Code of Practice provision contemplating only the bonds provided for by the Code, other bonds are not within the purview of its provision, and, not being regulated thereby, are left to be governed by that law that was in force when the Code of Practice was adopted. The act of 1828 is therefore still in force as to bonds not provided for by the Code of Practice.

In addition to this, and aside from the act of 1828, section 134 of the Civil Code of Practice provides: "The court may, at any time, in furtherance of justice, and on such terms as may be proper, cause or permit a pleading or pro-

ceeding to be amended, by adding or striking out the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case; or, if the amendment do not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." This is a general provision. It includes not only pleadings, but every proceeding. Under it, as has been held, a bastardy warrant may be amended (Commonwealth v. Cantrell, 45 S. W., 72, 20 Ky. Law Rep., 24), or notice of a contested election under the former statute (Wilson v. Hines, 99 Ky., 221, 18 R., 233, 35 S. W., 627, 37 S. W., 148), or the issue on appeal from a justice's court to the circuit court (Willis v. McNeal's Adm'r, 8 Ky. Law Rep., 411). As the Code regulates proceedings in all actions, so this action allows an amendment of all proceedings in the process of an action. It was intended by it to provide in general for the amendment of anything that was found to be defective in the progress of an action, the purpose being to perfect rather than to destroy. It is not limited to mistakes in pleadings, but is intended to cover any kind of a mistake, and to allow an amendment. At common law, and before the passage of the modern statutes, very many mistakes or clerical errors were cause for the dismissal of an action or the defeating of justice. The act of 1828 is only one of several acts passed by the Kentucky Legislature allowing amendments so that injustice should not be done. These acts were in force when the Code was adopted, and it was the clear purpose of the Code to continue the same principles in force, and to allow amendments even more liberally than before. Under section 134, a bond required in the course of a judicial proceeding not provided for by the Code, aside from the act of 1828, may be amended just as any other proceeding in the case may be amended. Sec-

tion 682 points out specifically how the bonds provided by
the Code may be amended, but section 134, which applies
to everything else, allows· amendments in furtherance of
justice, and on such terms as the court may deem proper.
In other words, having provided by section 682 how Code
bonds may be amended if defective, the Legislature, by sec-
tion 134, made a general provision applicable to everything
else that nothing might be omitted.  The words "a mistake in
any other respect" are very comprehensive, and, there being
nothing in the statute to limit them, they must include
mistakes in a bond as well as mistakes in any other part
of the proceeding.  A number of bonds are provided for in
the Kentucky Statutes, such as bastardy bonds, bonds of
persons bringing in a pauper, apprenticeship bonds, replevin
bonds, bonds of vagrants, contractors' bonds, and the like.
None of these bonds are provided for by the Code, and,
if they may not be amended under section 134, then we
have the anomaly that, while everything else in a- judicial
proceeding may be amended in case a mistake is made, there
is no remedy for a mistake in a bond not provided for by the
Code.  This we are not willing to held, in view of the broad
language of the statute, when there is no reason why these
bonds should be put on a different plane from everything
else.  To construe section 134 as allowing amendments of
bonds not provided by the Code does not make section 682
meaningless.  Section 682 applies to bonds provided for by
the Code, and is a specific provision as to the mode of
amending them.  Bonds not provided for by the Code, not
being within the purview of section 682, are provided for
by section 134, which is a general provision for amending
every mistake in a proceeding as to which there is not else-
where a specific provision.  The act of 1828 is not repealed

by section 134 of the Code, because that section is designed
to effect the same thing, so far as appeal bonds go, as the
act of 1828; the only difference being that section 134 is
broader in its terms that the act of 1828. Still, as to appeal
bonds, both have the same purpose. Implied repeals are not
favored, and it can not be presumed that, in providing that
any mistake might be corrected the Legislature had in mind
repealing a specific provision for the giving of a good appeal
bond in the place of one that was defective.

We therefore conclude that the amended bond tendered
in this court should be accepted, and the motion to dismiss
the appeal is overruled.

The circuit court threw out Huntsville precinct, in Butler
county, and Bee Spring precinct, in Edmonson county; but,
after these two precincts were thrown out, appellant was
still left with a majority, so we need not consider whether the
Huntsville precinct and the Bee Spring precinct were prop-
erly thrown out. The court recounted the vote in precincts
25 and 22 of Warren county. The result in these two pre-
cincts on the official count and the recount was as follows:

|  |  | Re- |
| No. 25. | Count. | count. |
| Bradburn ........................ | 138 | 197 |
| Galloway ....................... | 195 | 145 |
| No. 22. | | |
| Bradburn ....................... | 119 | 241 |
| Galloway ....................... | 152 | 13 |

It will thus be seen that, while appellant received on the
official count a large majority in these two precincts, the ap-
pellee on the recount received the majority. In other words,
122 ballots which were counted for the appellant on the
official count in precinct 22 were counted for appellee on the
recount, and 50 ballots in precinct 25 that were counted

for appellant on the original count were counted for appellee
on the recount.  When the ballots were opened in court,
appellant offered evidence tending to show that the ballots
had been tampered with since they left the hands of the
election officers.  The circuit court declined to receive the
evidence on the ground that the time for taking evidence
had passed.  In this he erred.  The ballots were evidence
in the case themselves, and, when the question was made
that the evidence itself had been mutilated, the court had
power summarily to determine the question.  For example,
if it had appeared that a deposition had been mutiliated
after it was taken, the court might have heard evidence
to show what the deposition really was.  The same is true
as to the ballots or any other exhibit when offered.  The
evidence may be heard by the court summarily in open
court, in order for the court to determine what the writing
which the law makes evidence in fact is.  Otherwise the
court might be required to base its judgment upon a forgery.
The ballots in a case of this character stand like any other
part of the record, and, if any part of the record has been
tampered with, this fact may be summarily determined, so
that the court may know what the record before him really
is.  But while the court rejected the evidence offered by
the appellant on this subject, the ballots themselves, and the
envelope in which they were put, have been brought up to us,
and, from an examination of them, we have no doubt that
the ballots have been mutilated since they were returned
by the election officers.  The ballots referred to were all
stamped under the Republican device, and when opened in
court they were also stamped in the small square opposite
appellee's name and opposite Speed Guffy's name, which were
under the Democratic device, in the other column on the
ballot.  Every ballot that was thus marked for appellee

Galloway v. Bradburn.

was also marked for Guffy, and these marks are in plainly a different ink, and made with a different stencil from the mark under the Republican device which the voter put there. The envelope containing the ballots in one of the precincts also discloses the fraud, because it has on it two colors of sealing wax, the lighter shade being on top of the darker shade; and the folding of the envelope when it was stamped the last time covered part of the name of one of the officers of the election, written across the envelope when it was first sealed. In the other precinct the ballots were re-put in the envelope at all. These two precincts were reliable Republican precincts. The majority which appellant got in the two precincts by the official count was about the same they gave all the other officers running on the Republican ticket at the same election, and about the same that they have given in recent elections for a number of years. When the candidates for governor, attorney general, mayor, and judge of this court all received about the vote which was given appellant on the official count, it is incredible that only 13 voters in precinct 22 voted for him; and the decrepancy in the other precinct, while not so large, is also incredible. The testimony of the election officers is that the ballots in these two precincts were counted without any dispute or question. There were inspectors present for both parties. The ballots were taken out of the boxes and placed in three piles—the straight Republican ballots in one pile, the straight Democratic ballots in another pile, and the crossed ballots in a third pile. If there had been in either of these precincts such a number of crossed ballots as now appears, it would have astonished every man present at the count. Such a great discrepancy in the count could not exist by mistake. It could have only come to pass by fraud on the part of the election officers and the inspectors.

The testimony of the officers is that the count went off smoothly, and there is nothing in the record to cast suspicion on the integrity of the officials. When we look at the ballots, it is not difficult, from the difference of the ink and the marking, to tell what ballots were voted or counted for appellee by them and what ballots were voted or counted for appellant.

The rule is that the certificate of the officers of election is *prima facie* correct, and that the presumption of the proper discharge of official duty in counting the ballots is not overthrown where the ballots have been tampered with after they were deposited in the ballot box. As the ballots in the case before us have been tampered with, the certificate of the election officers is the best evidence as to how the vote was cast; and, as on this basis appellant was elected, it is unnecessary for us to determine any of the other matters discussed by counsel. Bailey v. Hurst, 68 S. W., 867, 24 Ky. Law Rep., 504; Hamilton v. Young, 81 S. W., 682, 26 Ky. Law Rep., 447.

Judgment reversed, and cause remanded for judgment as herein indicated.