## Thompson v. Stone.

(Decided March 26, 1915.)

## Appeal from Lawrence Circuit Court.

1.  Elections—Pleading.—Where in an election contest it is alleged that certain parties voted illegally and without right and the petition failed to state the names of the parties so voting, the contention of contestee that the petition should be more specific should have been sustained.
2.  Elections—Recount of Ballots—Refusal of Court to Order.—Where it is admitted that the ballot boxes had been kept in a place where unauthorized and interested persons had opportunities to tamper with them the court properly refused to open the boxes and recount the ballots.
3.  Elections—Ballots—Burden of Proof.—The burden is upon the party producing and relying upon such ballots to establish their integrity clearly and satisfactorily. To render them incompetent as evidence, the objecting party is not compelled to show that they have been tampered with, but it is only necessary to show that interested and unauthorized persons had opportunity to do so.
4.  Elections—Fraud or Irregularities—Evidence.—Where the principal ground relied upon was that of fraud upon the part of the election officers, the evidence examined and fails to show any fraud or corruption upon the part. of the election officer, and while there is evidence of some irregularities, Held, that there was not enough to change the result of the election, and the election was, therefore, valid.

R. C. McCLURE, FRED M. VINSON, CAIN & THOMPSON and C. B. WHEELER for appellant.

HAZELRIGG & HAZELRIGG, PROCTOR K. MALIN, H. C. SULLIVAN and W. D. O'NEAL, JR., for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The parties to this appeal were rival candidates for the office of sheriff in Lawrence County at the November, 1913, election. Thompson was the Republican nominee and Stone the Democrat. The commissioners counted and compared the election returns and found that Stone had received 17 more votes than Thompson, and thereupon awarded Stone a certificate of election.

Thompson contests and charges fraud and mistake on the part of the election officers in counting the ballots; that in each precinct there were 25 illegal votes counted and cast against him; that in each precinct the votes of 25 persons were counted against him which were

cast openly or in the presence of the election officers without the voter being required to make oath as to disability; that in each precinct 25 voters were bribed to vote against him by the use of money or whiskey; that in Lower Louisa precinct the polls were kept open after 4 o'clock, and 25 votes were received after that hour, and all of them voted against Thompson. The voters were not named in any case. The contestant prayed that the ballots in each precinct in the county be recounted, and that the vote in Lower Louisa precinct be disregarded, and that the votes of all persons not legally entitled to vote, and those voting openly be deducted from the total number counted for Stone.

Stone moved to require Thompson to make his petition more specific and give the names of the illegal voters and those who voted openly and without oath as to disability, as well as the names of any persons who voted in Lower Louisa precinct after 4 o'clock. Demurrer was also filed to every paragraph of the petition, and then, without waiving his motion and demurrer, Stone answered with a traverse, setting up counter-charges against Thompson, but making them no more specific than the grounds set up in the petition.

Thompson demurred to the answer, and, without waiving his demurrer, filed reply in which issue was joined on all the affirmative allegations of the answer. The court overruled all demurrers and all motions to make the pleadings more specific.

The contestant offered no proof as to fraud or mistake of the election officers, and no attempt was made to substantiate the allegation with reference to bribery. A mass of proof was taken by each party affecting more than 100 persons who voted in the election. The right of some to vote at all was contested, and in other cases the propriety of counting their vote was contested because they were permitted to vote without taking an oath as to physical disability. A separate case is practiced if not plead as to each of the 100 voters, but we find it unnecessary to burden this opinion with a detailed discussion of each case. While many instances are shown of irregular and illegal voting, it is sufficient to say that after a careful consideration of the proof, we find approximately an equal number of such cases on each side. If the votes of persons so affected be deducted the result is not changed.

Thompson tries to escape this conclusion by saying that the pleadings of Stone do not warrant any deductions from the Thompson vote—that is, the answer of Stone does not give the names of any voting for Thompson where they had no right to vote or voted illegally. But, as we have already stated, Thompson's petition is open to the same criticism, and to apply the rule to him would leave the contest just where he began it. The court should have sustained the objections made to both the petition and answer.

Lunsford v. Culton, 15 K. L. R., 504; Tunks v. Vincent, 106 Ky., 824; Weller v. Menninghoff, 155 Ky., 77; Harton v. Botts, 158 Ky., 11; Clark v. Robinson, 159 Ky., 25; Francis v. Sturgill, 163 Ky., 650. Proof was heard on these questions without objection from either party; it is clear that contestant's case was not made out or sustained by either pleadings or proof.

As to Lower Louisa precinct, there is a sharp conflict in the testimony as to whether the polls were kept open after 4 o'clock. The officers were 20 minutes late in opening the polls on the morning of the election, and there is testimony to the effect that they agreed to and did keep the polls open 20 minutes after closing time. Accepting contestant's proof as establishing this fact, then it appears that 13 votes were cast at that precinct, one of whom was an officer of the election, after 4 o'clock. Of these, six were cast for Stone and three for Thompson. There is no proof to show for whom the other four voted. It is not contended that the election officers at this precinct acted corruptly in this or any other respect. The result of the election is not changed by deducting the votes above named, and, under the circumstances, it would be an unwarrantable infringement upon the rights of the voters if this court should reject all the other votes cast in the precinct because of this irregularity.

The main question in the case, and, as we conceive, the excuse for the contest, is the right of the contestant to have the boxes opened and the ballots recounted. It seems that when the election officers brought in the returns and delivered them to the county clerk, and when the clerk opened the boxes and made the inspection required by law, he or the election officers, by mistake, locked up in the boxes from some precincts the questioned ballots from such precincts. The contestant Thompson evidently believed that a proper count of these ques-

tioned ballots would show that he was entitled to a certificate of election, and the failure of the election commissioners to count or consider the questioned ballots, no doubt, caused the contest and prompted contestant's prayer to have the ballot boxes opened and all the ballots—both questioned and counted—recounted. The lower court refused to do this, and, as we take it, this is the chief ground urged by contestant, who is the appellant here, for a reversal of the case. As is said in the recent case of Thomas v. Marshall, 160 Ky., 168, the solution of this question depends on how the ballots and boxes were preserved between the time of their return to the county clerk by the election officers and the time when the boxes were offered to be opened and the ballots recounted by the court. It was held in that case:

"That when the ballots are produced from the custody of the officer whose duty it is to preserve them are shown to have been preserved from intermeddling from unauthorized persons, and are apparently unchanged, they will be received as evidence of what they may show upon their face; but where they may have apparently been tampered with, or where opportunities have been afforded to tamper with them, then the burden is upon the party producing and relying upon such ballots to establish their integrity clearly and satisfactorily by the evidence." Hamilton v. Young, 26 Ky. L. R., 447; Galloway v. Bradburn, 119 Ky., 49; Scholl v. Bell, 125 Ky., 750; Browning v. Lovett, 139 Ky., 480; Baker v. Dinsmore, 138 Ky., 277; Powell v. Horn, 159 Ky., 532; Snowden v. Flanery, 159 Ky., 568; McEuen v. Carey, 123 Ky., 536.

So, in this case, the question is whether unauthorized or interested persons have had opportunities to tamper with them. If so, then the lower court properly declined to open the boxes and count the ballots.

On January 15th, following the November election, the contestant made a motion to have the court take the ballot boxes out of the custody of the county court clerk, and in support of his motion filed an affidavit which alone is sufficient to settle the question adversely to appellant's contention. The affidavit is as follows:

"The affiant, J. H. Thompson, says he is the contestant in this case; that the ballot boxes, ballots, stubs and papers used at and in connection with the election

in contest have been in the custody of the county court clerk, Mont Holt, since said election until the first Monday in January, 1914, and after that time, and now are in the custody of M. A. Hay, county court clerk, successor to said Holt; the said ballots, ballot boxes, papers, stubs, &c., are kept and are now in the county court clerk's office stacked where the people and patrons of said office generally go and work; there is no private room or place in said county clerk's office where said clerk can keep said ballots, boxes, &c., other than in the main office room where the public generally are received and where the clerks work, or in the room where all the records of said office are kept, such as deed records, mortgage records, county court order books and all the records belonging to said office, and in this room all the public generally go and work in investigating and looking up said records; affiant further says that he understands that said clerk's office is kept open part of the time at night and that parties are permitted to work therein at night, and as he is informed one of the attorneys for contestee in this case was and has been permitted to work in said office until 10 o'clock at night making abstract of titles to real estate for his other clients, and that he was in the room where the ballot boxes are, alone during that time, while affiant does not charge or say that the parties so using said offices tampered with or had any intention of tampering with the ballots or boxes, but, as affiant is informed, the contestee and his counsel claim that because these ballots, boxes, &c., are in such position that they cannot be accepted in evidence and intend to object to their being so accepted on that ground under the claim that they 'might' have been tampered with. Affiant is interested only in the proper preservation of the ballots, boxes, &c., and the keeping of them intact and for this purpose he asks the court to take charge of same and make such orders as will do so. Affiant further says that he nor no one interested in this case have had anything to do with or connection with said ballots, boxes, &c., or the use of said office in the manner aforesaid since they have been there, and affiant does not know that contestee or any one interested for him has or would attempt to tamper with them, but will further investigate and present the evidence on this point when the court hears the motion to count and receive said ballots in evidence, but he

insists that the court take such steps now as will protect them from such criticism from now till counted."

Before passing on the motion, the court heard the testimony of the clerk and his deputies, and their evidence corroborates the affidavit. The affidavit discredits the integrity of the ballots, for it is apparent that there was every opportunity to tamper with them. The burden is not upon the party objecting to show that they have been tampered with.

In such cases "the burden is upon the party producing and relying upon such ballots to establish their integrity clearly and satisfactorily by the evidence." The contestant's own evidence discredits the ballots, and we are of opinion that the court properly declined to consider them.

There is evidence of some irregularities and illegal voting, but a certain amount of this occurs at every election, and is due to mistake or ignorance on the part of the voter or election officer. But the election is not invalidated unless the irregularities are sufficient to change the result. There is no evidence of fraud or corruption upon the part of any of the election officers, or of any effort upon the part of any one to thwart the will of the voters or to take any unfair advantage. On the whole, we are impressed that the election was conducted fairly and honestly.

Perceiving no prejudicial error, the judgment is affirmed.