## Rich v. Young.

(Decided October 2, 1917.)

### Appeal from Caldwell Circuit Court.

1. Elections—Contest—Evidence.—In an election contest, growing out of a municipal primary election, upon the issue as to which of the parties certain illegal voters had cast their ballots for, evidence that such voters entertained hostile feelings toward the city administration and its officers was inadmissible as hearsay circumstantial evidence and has no probative value.

2. Elections—Evidence—Opening of Ballot Box.—In an election contest, before the ballot box can be opened and the ballots recounted to rebut the presumption of the correctness of the certificate of election, the one seeking the recount of ballots must prove clearly and satisfactorily that the box has been kept as the statute re-

quires, that the ballots have not been tampered with since the election, and that the ballots offered in evidence are the identical ones cast.

R. W. LISANBY for appellant.

JOHN C. GATES and J. E. BAKER for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

At the recent primary election, appellant and appellee were opposing candidates for the Democratic nomination for councilman in the first ward of the city of Princeton, a city of the fourth class. The election officers certified that appellant received forty-six votes and Young forty-nine votes, and the certificate of nomination was issued to appellee.

Appellant, in due time, gave notice and filed this contest in the Caldwell circuit court, alleging that six named persons, who were not legal voters, had cast their ballots and the same were counted for appellee; that one John T. Lewis, a legal voter, had voted twice for appellee; and that "at least two votes were cast for this plaintiff, but by error and mistake of said election officers were counted for the said Young."

Appellee answered, admitting that the six named persons were not legal voters; that three of them had voted for him and their votes were so counted; but he denied that the other three admittedly illegal votes were cast for him, and alleged that they were cast and counted for appellant. He denied that Lewis had voted twice and that his vote had been counted twice for him; and also denied the allegation that two, or any number of, votes cast for appellant were, by error or mistake or at all, counted for him.

Upon these issues, the case went to trial, resulting in a judgment in favor of appellee.

Herschel Stevens, John H. Workman, and Lewis Goodaker are the persons admitted to have voted illegally, and alleged, by each party, to have voted for his opponent. There is no proof whatever that John T. Lewis voted twice; nor is there any proof that any ballots, cast for appellant, were counted for appellee. So, these two grounds of contest may be eliminated from our consideration, which leaves for our determination only the proof of how Stevens, Workman and Goodaker voted, and whether or not the court erred in refusing to open the ballot box and recount the ballots.

After deducting from the forty-nine votes certified by the election officers as cast for appellee, the three illegal votes admitted by appellee to have been cast for him, the vote is a tie, forty-six to forty-six. Upon the trial, appellant offered as witnesses in his behalf, himself, J. M. McLin, chief of police, D. B. Leech, superintendent of waterworks, and R. W. Lisanby, mayor of the city of Princeton. By all these witnesses, he offered to prove, as shown by avowals, that they were familiar with the issues involved in the primary election in question; that the issue involved was whether or not the mayor, chief of police, superintendent of waterworks, and the city administration should be endorsed; that appellant was an administration candidate; that appellee was an anti-administration candidate and opposed to the reappointment, by the new council to be elected, of the mayor, chief of police and superintendent of waterworks; that that issue was generally known among the voters; that the witnesses knew the state of feelings of the voters, Herschel Stevens and John H. Workman, toward the administration, the mayor, chief of police and superintendent of waterworks; and that they were hostile.

None of this evidence was admitted, and that this was error is insisted by counsel for appellant. Stevens, Workman, and Goodaker were present in court in obedience to a subpoena issued for their attendance as witnesses for appellant, although he did not introduce any of them as a witness in his behalf. After the offer of the above evidence by appellant and its rejection by the court, the following order was entered by the court:

"There being no objection the election officers in Precinct No. 1, Ward 1, are directed to turn over to the clerk of this court keys to the ballot box of this ward; and the county court clerk is directed to turn over to the clerk of this court the ballot box and the return of the stub book showing the return of the election officers in this ward, all unused or mutilated ballots returned by the officers in said Ward No. 1, to be held by him subject to the future orders of this court."

After this order was entered by the court, the transcript shows that "plaintiff offers to open the ballot box and count the ballots, and moves the court to count the ballots. The defendant objects; sustained; plaintiff excepts." Appellant then closed. Appellee introduced Lewis Goodaker as a witness, who testified, without objection from appellant, that at the primary election he

cast his vote for appellant. This was all the evidence introduced, or offered, except that of one witness in rebuttal upon an unimportant matter.

As it is admitted by the pleadings that Goodaker was not a legal voter at the primary election and as all the evidence with reference to how he voted shows that he voted for appellant, his vote must be deducted from the forty-six votes counted for appellant, leaving him forty-five to appellant's forty-six, upon the pleadings and testimony admitted by the court. So, unless the court erred, in rejecting the offered testimony with reference to Stevens and Workman, and in overruling appellant's motion to open the ballot box and to count the votes, the judgment must be affirmed. It is upon these two alleged errors that appellant relies for a reversal.

Appellant assumed the burden of proving his controverted allegation that Stevens and Workman voted for appellee, and it is argued for him that the rejected evidence was circumstantial evidence that these votes, admittedly illegal, were cast for appellee. Conceding, for the purpose of the decision of this case only, that circumstantial evidence was admissible to show how the contested ballots were cast, without first having put the voters upon the stand to testify how they voted, as appellee contends must have been done under Tunks v. Vincent, 106 Ky. 829, when their testimony was available as it was here, we will examine the offered evidence to see whether or not it had any probative value upon the question. None of the four witnesses introduced by appellant offered to testify that he knew of the state of feeling of any of the voters toward appellant or appellee, but only that he knew of the feeling of these voters toward the city officers and the city administration, and that towards these officers and the city administration their feelings were hostile. None of these witnesses testified that he had ever had any conversation with either Stevens or Workman. Upon the other hand, two of these witnesses, who were asked if they had ever had any conversation with either of these voters or heard either of them express himself as to his feelings toward the administration and the city officers, said that they had never heard either express himself upon the question. It is, therefore, made clear that these witnesses were attempting to prove the attitude of these voters, not toward the candidates themselves, but toward the city administration and its officers, and not from anything

they knew of their own personal knowledge, but from what they had learned from sources other than the voters themselves. This is not character evidence, and, if evidence at all, is at most but hearsay circumstantial evidence upon a controverted fact, which is of no probative value whatever and is inadmissible under every rule of evidence with which we are familiar, and the court did not err in its exclusion. There was, therefore, no evidence that either Stevens or Workman voted for appellee and their votes should not be deducted from his total.

2. It has been repeatedly decided in this state that the certificate of election is *prima facie* evidence of the result of an election, but that the best evidence is the ballots themselves, to which recourse may be had whenever, in a contested election, a reasonable showing is made that the certificate of election is not correct and the integrity of the ballots is established. But it has been held in every case without exception that, before the ballot box can be opened and the ballots recounted, the one seeking the recount must prove clearly and satisfactorily that the ballot box has been kept as the statute requires, that the ballots have not been tampered with since the election, and that the ballots offered in evidence are the identical ones cast. Edwards v. Logan, 114 Ky. 312; McEuen v. Carey, 123 Ky. 536; Baker v. Dinsmore, 138 Ky. 277; Pace v. Reed, 138 Ky. 605; Morgan v. Sparkman, 143 Ky. 27; Thomas v. Marshall, 160 Ky. 168; Ottley, v. Herriford, 161 Ky. 7; Thompson v. Stone, 164 Ky. 18.

In the case at bar, even if we assume that appellant had made a sufficient showing of error in the certified count to overcome the presumption of its accuracy and that the ballot box was brought into court and offered in evidence, which does not appear very satisfactorily from the record to have been done, appellant failed to introduce any evidence whatever that the ballot box had been kept as the statute requires, or that the ballots had not been tampered with since the election. In the absence of such proof, the trial court was without authority to open the ballot box or to recount the ballots. For the same reason, the application made by appellant to this court for a subpoena *duces tecum* for the production of the ballot box here must be denied. Even though an inspection of the ballot box, upon its tender in evidence by the legal custodian, might show no evidence of having been tampered with and prove the *probability* of security,

this, under Edwards v. Logan, 114 Ky. 312; Bailey v. Hurst, 113 Ky. 699; and Thomas v. Marshall, 160 Ky. 168, is. not sufficient to warrant a recount of the ballots; the proof must be clear and convincing that the ballot box and ballots have been "rigorously preserved." The presumption of certitude, that is, the *prima facie* case, is with the certificate of election, and this cannot be overcome except by a recount of the ballots, which is not allowed under the authorities until their integrity is established by clear and satisfactory evidence, and this evidence is not supplied by the mere presumption that the officer, in possession of the ballot box under the law, has performed his duty.

Wherefore, the judgment is affirmed, and this contest having been decided in favor of the contestee, an order will be entered certifying this fact to the Secretary of State and to the county court clerk of Caldwell county.