**LEDFORD et al. v. UNITED STATES.**
No. 10076.

Circuit Court of Appeals, Sixth Circuit.
May 31, 1946.

Harry B. Miller, of Lexington, Ky. (Harry B. Miller, of Lexington, Ky., James Sampson, of Harlan, Ky., and Golden & Lay, of Pineville, Ky., on the brief), for appellants.

R. M. Stephenson, of Lexington, Ky. (Claude P. Stephens and Robert M. Stephenson, both of Lexington, Ky., on the brief), for appellee.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The four appellants were indicted, convicted and sentenced for violation of Section 19 of the Criminal Code, Title 18, U.S.C.A. § 51, which penalizes conspiracy by two or more persons "to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." The Supreme Court has held that this section of the Criminal Code embraces the right of a voter in a Congressional election to have his vote honestly counted, and is violated by a conspiracy of election officials to stuff a ballot box in an election to choose a United States Senator. United States v.

Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L. Ed. 1341.

Appellants were charged with unlawful and fraudulent acts in holding an election in Mary Helen Precinct, No. 39-A, in Harlan County, Kentucky. In that election, a United States Senator and a Congressman for the district were to be chosen. Appellants Metcalf and Lint were election judges; Ledford, election clerk; and Brock, election sheriff, for the precinct. The paraphernalia to be used in conducting the election was delivered to Ledford as election clerk. Ledford receipted the County Court Clerk of Harlan County for the paraphernalia, described in the receipt as consisting of "one ballot box, empty and securely locked by three Yale locks, book, sample ballots, instruction cards, 'unused' rubber stamp, stencils, ink pads, election seal, sealing wax, large envelope and other supplies, including precinct register containing 'copy' registration records, and three typewritten copies of names and addresses of voters."

After the election, Ledford and Brock delivered to the County Court Clerk the ballot box, containing the official ballots deposited in it, and the other material used in the election in Mary Helen Precinct, No. 39-A. The ballots, apparently officially cast, contained in the ballot box were signed by Ledford, election clerk, and Lint, election judge. From the stub book which originally contained the official ballots, 411 ballots had been removed. The report of the election commissioners who made the official count certified that 411 ballots had been cast for United States Senator, 371 of which were for Chandler, the Democratic candidate, and 39 for Colbert, the Republican candidate. One ballot was marked "spoiled." Robsion, who had no opposition for Congressman, received 410 votes.

The argument of the attorney for appellants that there was insufficient proof to establish the guilt of the defendants is without reasonable foundation. Metcalf, election judge, and the other three appellants endorsed warrants issued by the County Court Clerk and drawn on the Treasurer of Harlan County, Kentucky, for their services as election officials. It is logical to infer that they actually served as such. There was evidence to support a fair inference that appellants had removed from the stub book the blank ballots which had not been voted and had marked and cast them fraudulently in the names of numerous persons, many of whom were not legally qualified voters, some of whom were dead, others absent by reason of service in the armed forces of the United States, some sick, and others for various reasons not in attendance at the polls. Expert testimony of an agent of the Federal Bureau of Investigation who examined the ballots in connection with the investigation of the crime proved that numerous ballots had been marked while still attached to the stub book and had been placed thereafter in the ballot box and returned with the ballots lawfully cast. From the evidence which went to the jury, it is obvious that the stream of election purity was deliberately polluted by the convicted appellants.

Appellants base their main argument for reversal on the proposition that the election paraphernalia, including the ballots, should not have been received in evidence, for the reason that opportunity had been afforded persons other than the defendants to tamper with the ballots in the office of the County Court Clerk after the election. Appellants contend that, inasmuch as there is no prescribed federal procedure for the introduction in evidence of ballots or ballot boxes, the state law should be applied; and that, under the law of Kentucky, the burden is upon the party producing and relying upon the ballots to establish their integrity by clear and satisfactory evidence. Thompson v. Stone, 164 Ky. 18, 21, 174 S.W. 763.

In Rich v. Young, 176 Ky. 813, 817, 197 S.W. 442, 444, the Court of Appeals of Kentucky declared that "it has been held in every case without exception that, before the ballot box can be opened and the ballots recounted, the one seeking the recount must prove clearly and satisfactorily that the ballot box has been kept as the statute requires, that the ballots have not been tampered with since the election, and that the ballots offered in evidence are the iden-

tical ones cast." See to same effect Lewis v. Hensley, 238 Ky. 58, 62, 36 S.W.2d 840.

But it should be borne in mind that the rule announced in the Kentucky cases was declared and has been applied only in relation to election contests. In such cases, the issue is whether any particular ballot should be counted for or against the contestant.

■ There are state court authorities to the effect that, in criminal prosecutions for violation of election laws, ballots are not inadmissible in evidence by reason of any analogy to the rule of admissibility in election contests, where it must be shown that the ballots have been carefully preserved, their integrity protected after the election, and no opportunity afforded for tampering with them. These authorities hold that, in criminal cases, ballots are admissible in evidence without a showing that they have been preserved in the same condition after the election as when voted. The issue in an election contest is the title to a public office; in a prosecution for election fraud, the issue is whether there has been a violation of a criminal statute. For examples, see State v. Carr, 151 Kan. 36, 98 P.2d 393, 399; People v. Newsome, 291 Ill. 11, 125 N.E. 735, 738; People v. Harrison, 384 Ill. 201, 51 N.E.2d 172, 175.

■ The instant case is not an election contest, but is a prosecution for violation of a criminal statute of the United States. While state court authority is considered respectfully, federal criminal procedure is governed not by state practice, but by federal statutes and decisions of the federal courts. United States v. Murdock, 284 U. S. 141, 150, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376. As early as 1851, Chief Justice Taney declared in United States v. Reid, 12 How. 361, 363, 13 L.Ed. 1023, that it could not be supposed, without very plain words to show it, that Congress intended to give to the states the power of prescribing the rules of evidence in trials for offenses against the United States, for any such construction "would in effect place the criminal jurisprudence of one sovereignty under the control of another." See also Logan v. United States, 144 U.S. 263,

301, 303, 12 S.Ct. 617, 36 L.Ed. 429; Jones v. United States, 9 Cir., 162 F. 417, 419. Cf. King v. Worthington, 104 U.S. 44, 50, 51, 26 L.Ed. 652; United States v. Thompson, 251 U.S. 407, 416, 40 S.Ct. 289, 64 L. Ed. 333.

We are of opinion that the decision in Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136, overruling Hendrix v. United States, 219 U.S. 79, 131 S.Ct. 193, 55 L.Ed. 102, and Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214, does not detract from the authority of the opinions in the Reid and Logan cases. Mr. Justice Sutherland, writing upon the thesis that the fundamental basis of all rules of evidence "is their adaptation to the successful development of the truth," asserted that "a rule of evidence at one time thought necessary to the ascertainment of truth should yield to the experience of a succeeding generation whenever that experience has clearly demonstrated the fallacy or unwisdom of the old rule." 290 U.S. at page 381, 54 S.Ct. at page 215, 78 L.Ed. 369, 93 A.L.R. 1136. The new Rules of Criminal Procedure, which were not operative at the time of the trial below but reveal the juristic trend, apparently reenforce this principle. See Rule 26. Evidence.

■ In the light of reason and experience, we find no fallacy or unwisdom in the action of the district court in receiving in evidence the ballots and election paraphernalia. The jury had possession of all the facts pertaining to the custody and handling of the ballots and paraphernalia before and after the election. If the jurors believed from the evidence that the ballots had been tampered with after being returned to the office of the County Court Clerk, it is safe to assume that no weight would have been attached to them as evidentiary of the guilt of the accused precinct election officials. The ballots were admissible to carry only such weight as the jury chose to give them.

■ A criminal conspiracy may be established by circumstantial evidence. In the light of all the circumstances of this case, the jury was warranted in finding that

the four appellants were guilty of a criminal conspiracy as defined in Section 19 of the Criminal Code. The district judge ruled carefully and correctly upon all documents and testimony admitted in evidence.

The judgments of conviction and sentence are affirmed.