CASE 58.—ACTION BY R. C. BROWNING AGAINST J. C. LOVITT, AND W. B. CROLEY AGAINST M. B. JONES.— June 13, 1906.

## Browning v. Lovitt.
## Croley v. Jones.

Appeals from Whitley Circuit Court.

From the judgment both parties appeal.—Affirmed.

1. Elections—Ballots—Arrangement.—Where an independent Republican ticket for five county officers was nominated by petition, in the manner provided by Ky. St., 1903, section 1453, and the petition requested the county clerk to have the names of all such candidates placed on the ballot in one and the same column, under a device selected by them, the clerk had no right to place each of such five candidates in a separate column under the device selected.

2. Judges—Disqualification.—Where the only reason assigned in an affidavit, to disqualify a judge from trying an election contest, was the fact that the chairman of the Republican

county committee, who was alleged to 'be an active and un-scrupulous adherent of the regular ticket, was a brother-in-law of the judge, and had openly boasted of his influence over him, and that contestants believed he would induce him to decide the contest adversely to contestants, but it did not appear that the judge authorized or approved such statements or that he was responsible for them, he properly declined to vacate the bench.

3. Elections—Contest—Ballots—Recount.—In an election contest, it was proper for the court, at contestants' request, to open the ballot boxes and recount the ballots.

4. Same—Returns—Contradiction—Election Officers.—An officer of election will not be permitted to contradict his solemn certificate to the returns signed by him at the close of the election by parol testimony in an election contest.

5. Same—Loss of Ballots—Certificate—Conclusiveness.—Where, in an election contest, the election commissioners have refused to count a precinct which gave a substantial majority for contestants, and pending a contest the ballots of such precinct were stolen from the box, the court properly accepted the certificate of the election officers in that precinct as the best evidence of the result of the election there.

6. Same.—Where, in an election contest, a recount is demanded and made, if a ballot box appears to have been opened since its delivery to the clerk by the officers of election, and the ballots show evidence of having been tampered with, the court should reject them and accept the certificate of the officers of election as the correct vote of such precinct.

7. Same—Evidence.—Where, in an election contest, a recount of the ballots is demanded, parol evidence is admissible to show the condition of the box and ballots when they were brought before the court and opened, at the time of the recount notwithstanding Ky. St., 1903, section 1596a, specifying the evidence that shall be taken in an election contest, contains no provision for the hearing of oral evidence by the court.

8. Same—Illiterate Voters—Marking Ballots—Statutes.—Ky. St. 1903, section 1475, declaring that voters shall declare on oath their inability on account of illiteracy or disability to properly mark their ballots before being permitted to have the assistance of the election officers, is mandatory, and ballots so marked before the requisite oath is taken should not be counted.

9. Same—Void Ballots—Rejection—Burden of Proof.—Where certain ballots voted by alleged illiterate persons at an

vol. 139—31

election were void, the contestants were not entitled for that reason to have the entire precinct rejected, but the burden was on them to show the names of the persons who thus voted and the candidates for whom they voted.

TYE, DENHAM & JACKSON, SHARP & SILER, C. W. LES-TER and J. W. ALCORN for appellant.

J. D. BLACK and K. D. PERKINS for appellee.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Reversing.

The voting population of Whitley county is largely Republican, and in 1905 growing out of dissatisfaction with the conduct of affairs by those in control of the party organization an independent Republican ticket for five county offices was nominated by petition in the manner provided in section 1453 of the Kentucky Statutes. The petition requested the county clerk to have the names of all these candidates placed on the official ballot under the device selected by them and in one and the same column, and it was the duty of the county clerk to place the name of all these candidates in one and the same column as requested and under the device selected. Creech v. Davis, 21 Ky. Law Rep., 325. The county clerk, being an active and pliant partisan of the regular Republican nominees, whilst leading these independent candidates to believes that he would comply with their direction and place their names in one and the same column, surreptitiously gave directions to the printer to put the name of each of the five candidates in a separate column, placing over each of the five columns the device selected. This arrangement of the ballot was carefully concealed from the independent candidates and their friends, and was only discovered by them

on the eve of the election, and too late to have the fraud corrected. This fraudulent scheme was plainly resorted to by the clerk for the purpose of misleading and confusing the voters, who might desire to vote the independent ticket, by compelling them to stamp the ballot in five places instead of one, the regular Republican ticket being placed in one column. The evidence does not directly disclose that either of the appellees was a party to this fraud, but it is perfectly manifest that it was perpetrated for their benefit as well as that of the other regular nominees and deprived the independent candidates of votes they would otherwise have received. Whether or not contestees who are the willing and grateful beneficiaries of a fraud of this or other like character practiced in their interest and who are holding offices as the result of it would be heard to say that they were innocent of any connection with it and ignorant of the fact that it was contemplated, presents an interesting question, but in as much as the contestants and appellants in this case do not seek to have the election declared void, we do not deem it necessary to express any opinion concerning it. Wilkins v. Duffy, 24 Ky. Law Rep., 913. Notwithstanding this illegal effort to defeat the independent candidates, all of them were declared elected except the appellant Browning who was a candidate for county judge, and the appellant Croley who was a candidate for sheriff. When the election commissioners assembled to canvass the returns, they declined to count or consider the returns of the election officers in precinct number thirteen, because the certificate of the election officers was defective, and leaving out that precinct they certified that the contestee and appellee Lovitt had received a majority of the votes cast for county judge and gave

him the certificate, and that contestee and appellee Jones had been elected sheriff and gave him the certificate. The appellants then contested the election in the manner provided in section 1596a, of the Kentucky Statutes, relying upon various grounds that will be hereafter noticed. When the case came on for trial, the appellants filed their affidavit asking that the regular judge for reasons therein stated vacate the bench. This he properly declined to do, as the affidavit did not disclose sufficient grounds under the statutes to require him to vacate or to make his failure to do so reversible error. The only reason assigned in the affidavit was the fact that the chairman of the Republican county committee, who was alleged to be an active and unscrupulous adherent of the regular ticket was a brother-in-law of the judge and had openly boasted of his influence over him, and they believed that he would induce him to decide the contest adversely to the contestants. It does not appear that the judge authorized or approved these statements of Moss, or that he was responsible for them, and the mere fact that some indiscreet or reckless friend of the court makes public boast of his great influence over the judge is no reason why he should vacate the bench.

The contestants requested the court to open the ballot boxes and recount the ballots, and over the objection of the contestees their motion was sustained, and the court proceeded to recount the ballots in the presence of the parties. This action of the court was proper as held in Edwards v. Long, 24 Ky. Law Rep., 1099; Preston v. Price, 27 Ky. Law Rep., 588. As the count progressed, it was discovered that the ballot box containing the returns from precinct number thirteen had been opened and the ballots and papers

contained therein abstracted.  This was the precinct that the election commissioners declined to count and the judge ascertained the result in this precinct from the certificate made by the officers of the election and of this action the appellees complain.  It appears that the votes received by the independent and regular candidates for county offices  were recorded in due form on the blank sheet attached to the ballots and provided for that purpose, but after this was done the election officers became involved in a dispute and none of them signed this certificate except the sheriff, but all of the officers did on the night of the election sign a certificate in form the same as the certificate attached to the ballots.  This certificate signed by all the officers did not give the contestants as many votes as the certificate signed by the sheriff, but was properly filled out showing the result in each race, and was certified over the signature of the officers to be a correct return of the vote.  Two of the election officers who signed the certificate testified for contestees that it was not correct, as it gave contestants more votes than they received, but their testimony given some months after the election was from memory only.  An officer of election will not be permitted to contradict in this manner pending a contest a solemn writing signed by him at the close of an election.  It is true that in Broadus v. Mason, 95 Ky., 421, a mistake made by the officers of the election was corrected, but in that case all the officers concurred in the fact that a mistake had been made and exhibited a paper kept while the votes were being counted showing plainly how the mistake occurred.  The mistake in that case was really a mistake in addition, and does not at all conflict  with  the  view  herein  expressed.  It seems  likely  that  the  failure  of  the  commis-

sioners to count this precinct that gave a
substantial majority for contestants had some-
thing to do with the ballots being stolen from the
box, as it might have been contemplated that the court
would do as the commissioners had done, not consider
the certificate of the officers, and as there would be
no ballots to count the precinct would necessarily be
lost to contestants. The action of the court in accept-
ing the certificate of election officers in that precinct
was entirely proper, as the certificate was the very
best evidence obtainable of the result. The ballots
had been stolen and unless the certificate of the offi-
cers was accepted the voters in that precinct would be
disfranchised. Edwards v. Long, 24 Ky. Law Rep.
1099; Preston v. Price, 27 Ky. Law Rep., 588; Ander-
son v. Likens, 104 Ky. 707.

When precinct number twenty-three was reached,
in the recount by the court, the contestants objected
to the court recounting the ballots because the ballot
box and the ballots therein bore evidence of having
been tampered with, and they requested the court to
accept the certificate of the officers as the best evi-
dence of the result in that precinct, but the court re-
fused to do this and proceeded to recount the ballots.
The certificate of the officers of the election showed
that Browning had received 132 votes, and Lovitt, 101,
Croley 140 votes and Jones 90. Upon a recount of
the ballots, the court gave Browning 111 and Lovitt
103, Croley 116 and Jones 95, making a difference
against contestant Browning in his vote as shown by
the certificate of the election officers of twenty-three
votes, and a difference against contestant Croley of
thirty-nine votes. When the box of this precinct was
produced, before the court, it showed that it was not
in the condition that the law requires, as one lock was

gone entirely, but aside from the condition of the box an inspection of the ballots which have been brought to this court makes it plain that an election thief had been at work. A number of ballots that we have examined show that not only a different stencil but different ink was used in perpetrating the bold and clumsy fraud, by which it was attempted to deprive contestants of a number of votes received by them in that precinct. When a recount is demanded and made, if the box appears to have been opened since its delivery to the clerk by the officers of the election, or if the ballots show evidence of having been tampered with, the court should reject them and accept the certificate of the officers of the election as the correct vote in the precinct. Edwards v. Long, 24 Ky. Law Rep. 1099; Hamilton v. Young, 26 Ky. Law Rep. 447; Galloway v. Bradburn, 26 Ky. Law Rep. 977; Bailey v. Hurst, 24 Ky. Law Rep. 504.

In this connection a question of practice is presented that should be disposed of. For the purpose of showing the condition of the box and ballots at the time of the recount, the contestants during the progress of the hearing before the lower court, introduced witnesses to testify as to the condition of the boxes and ballots when they were brought before the court and opened, and this testimony is exhibited in the form of a bill of exceptions duly signed by the judge. The appellees insist that this evidence cannot be considered because the Kentucky Statutes, section 1596a, in providing how elections shall be contested specifies the manner in which evidence shall be taken and makes no provision for the hearing of oral evidence by the court. Unless, however, oral evidence is permitted to be introduced at the time as to the condition of the box and ballots when they are before the

court, it would not be possible for this court to understand the condition of them if the box and ballots were not brought here, and if ordered here and lost or tampered with in transit, there would be no evidence on appeal of their condition at the time' of the recount, unless the court saw proper to embody in the record a statement of fact as to their condition. We think, therefore, that it is proper for either party to introduce before the court, during the hearing, witnesses who in the presence of the court and the parties have examined the box and ballots to testify as to their condition, and this evidence should be manifested in the form of a bill of exceptions regularly signed by the judge, and when brought to this court this evidence in connection with the box and ballots if sent here will be considered by this court. Galloway v. Bradburn, 26 Ky. Law Rep. 977.

In precinct number ten, appellant Browning received a majority of twenty-three votes, and appellant Croley a majority of thirty-three votes, as shown by the certificate of the election officers. In this precinct the lower court held that the election was so irregularly conducted as to render the same void, and none of the votes cast in the precinct were counted. The effect of this ruling was not only to disfranchise all the voters of that precinct, but to deprive appellants of the substantial majority they received as shown by the returns. The reason assigned for failing to count the vote in this precinct was that some twenty or thirty persons were directed how to vote by the officers of election upon the ground that they were illiterate and unable to mark their ballots without assistance, although none of them was sworn before his ballot was thus marked. That part of section 1475 of the Kentucky Statutes providing that voters shall

declare on oath their inability on account of illiteracy or disability to properly mark the ballot before being permitted to have the assistance of the election officers, has been construed by this court to be mandatory, and ballots marked before the requisite oath is taken should not be counted. Napier v. Cornett, 24 Ky. Law Rep. 576; Major v. Barker, 99 Ky. 305; Preston v. Price, 27 Ky. Law Rep. 588. The vote of this precinct was contested by contestees, who sought to have the entire precinct rejected because of the irregularity mentioned. The names of the persons who thus voted on the table and the candidates for whom they voted could have been ascertained by the contestees from the evidence of the officers of election who saw those persons vote and knew for whom they voted, or if need be by the evidence of the voters themselves, and the burden was on contestees to show these facts. If they had done this, these votes could and would have been deducted from the total without invalidating the entire election in that precinct, but failing to do this they cannot have the entire precinct rejected for this irregularity. Napier v. Cornett, 24 Ky. Law Rep. 576; Preston v. Price, 27 Ky. Law Rep. 588.

The officers of election in this precinct were introduced as witnesses for contestees, but they did not testify for whom these votes were cast. It appears that the irregularity in this precinct was the result of ignorance on the part of the election officers and was not committed with any fraudulent design, and in the absence of evidence showing for whom the voters not sworn cast their votes, the entire vote of the precinct should have been counted as certified to by the election officers, or as shown by the ballots if they had been counted. It does not appear however that a re-

count of the ballots in this precinct was made by the
court, and in the absence of a statement in the record
as to the result as shown by a recount of the ballots,
the vote as certified by the election officers must pre-
vail.

In Saxton precinct the evidence is very clear that a
number of illegal votes were given to contestees, and
in other precincts the contestees attacked the legality
of votes cast for contestants, but in view of the con-
clusion we have reached concerning the precincts be-
fore mentioned, we do not think it necessary to go
into the disputed questions of fact as to the evidence
in other precincts, as in no event would a decision be
affected by these votes.

The lower court found that Lovitt had a majority of
twenty-one votes and Jones a majority of thirteen
votes. Giving to Browning and Croley the number of
votes they are each entitled to under this opinion,
Browning has a majority of twenty-five votes and
Croley a majority of fifty-nine votes, and they are en-
titled to the respective offices for which they were
candidates.

In view of the importance of this election contest,
involving as it does the right to valuable offices, we
have carefully considered this record, and are entire-
ly satisfied with the correctness of the conclusion ar-
rived at. The election machinery in an effort to safe-
guard and preserve the integrity of the ballot is some-
what complicated, but the fundamental principle
underlying it is that every voter shall have the right
to cast his vote as he pleases and that every vote cast
shall be counted as it is cast, and running through all
the contested election cases decided by this court will
be found unmistakable expression of the determined
purpose of this court to secure so far as lies in its

power fair elections—to ignore mere technical errors, and disregard minor irregularities—to award the offices to those persons who have been elected by the voters, and in every instance fraud, violence and un-justifiable methods have been condemned, and candidates who have secured election by these methods have been compelled when the record authorized it to surrender their ill-gotten gains.

The judgment of the lower court is reversed, with directions to enter judgments awarding to R. C. Browning the office of county judge and to W. B. Croley the office of sheriff.