## Hackney v. Justice.

(Decided May 22, 1914.)

### Appeal from Pike Circuit Court.

1. Elections—Contest—When Recount of Ballots Proper.—In an election contest where the ballots are preserved so that their identity is assured, they can be counted during the contest; and they are undoubtedly better evidence of the vote cast than the returns, and should prevail where there is a difference. But before a recount should be allowed to rebut the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots have not been tampered with since the election, and that those offered in evidence are the identical ones cast.

2. Elections—Certificate of Precinct Officers of Election—Only Prima Facie Evidence of Correctness of Their Count—How Prima Facie Evidence Overthrown.—The rule in this State is firmly established that in an election contest the certificate of the precinct officers is prima facie evidence of the correctness of their count. But if the ballots themselves have been lawfully kept and are shown not to have been tampered with, then they must prevail over the certificate.

3. Elections—Irregularities or Mistakes on Part of Election Officers—When Not Allowed To Vitiate the Election.—Substantial compliance by the election officers with the requirements of the statute is all that is necessary; mere irregularities or mistakes in the performance of their duties, which are of a character that can be corrected by a recount of the ballots by the circuit court on the contest, give no cause for setting aside the election.

4. Elections—Bribery of Voters—When a Ground for Declaring the Election Void.—The policy of the law is to sustain elections. All of our rights, however, reach back to and rest upon a free ballot, because the sovereignty is in the people. If the source becomes muddy what flows from it will also be contaminated. Hence it follows that whenever fraud or bribery so far enters into an election that it is impossible to tell who has been elected by the legal votes, it is not to be upheld.

5. Elections—Bribery of Voters—When Not Allowed To Affect Validity of Election.—Where, in an election contest, bribery of voters by or for the contestee has been established by the evi-

dence, but there was no bribery committed by or for the contestant, and it is shown by the evidence that the latter received a clear majority of the legal votes cast, he will be entitled to the office, as the result of the election, as far as he was concerned, was not affected by the bribery.

A. F. CHILDERS, ROSCOE VANOVER for appellant.

J. E. CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

At the November election, 1913, the appellant, Emsy Hackney, and the appellee, J. A. Justice, were opposing candidates for the office of justice of the peace in magisterial district No. 8, in Pike County; the former being the nominee of the Republican party and the latter the nominee of the Democratic party. Magisterial district 8 contains two voting precincts, Lick precinct, No. 4, and Grapevine precinct, No. 22. According to the official returns appellant received 203 and appellee 116 votes in Lick precinct, which gave appellant a majority in that precinct of 84 votes. In Grapevine precinct appellant received 103 and appellee 147 votes, a majority in favor of the latter of 44 votes, making appellant's apparent majority in the magisterial district 40 votes, by virtue of which he received his certificate of election.

Thereafter and within the time fixed by law appellee, by petition filed in the Pike circuit court, instituted a contest for the office in question upon numerous grounds, and among them: (1), That by fraud or mistake on the part of the election officers the votes cast in each of the precincts composing the magisterial district were not properly or legally counted or certified; that appellee received many more votes than were counted or certified for him and appellant many less than were counted and certified for him, and that a fair canvass or recount of the votes as cast would show that appellee, instead of appellant, had received a majority of all the votes cast in the magisterial district, thereby entitling him to the office; (2), That appellant and others acting for him expended large sums of money in bribing voters to vote for him in the election, and that at least 25 voters whose votes were cast and counted for appellant in Lick precinct and an equal number whose votes were cast and counted for him in Grapevine precinct were paid in money and bribed by appellant, or others acting for him,

to so vote; that the rejection of these bribed votes would of itself give appellee a majority of the votes cast in the magisterial district and entitle him to the office for which he and appellant were candidates.

Appellant's answer specifically controverted, and therefore put in issue, the grounds of contest alleged in the petition. Upon the hearing of the contest the circuit court caused a recount to be made of the ballots in Lick precinct by commissioners appointed for that purpose. The recount was made in open court and in the presence of the parties to the contest. From an inspection of the ballots, the recount of the vote and all the evidence appearing in the record, the circuit court reached the conclusion that appellee had been legally elected to the office of justice of the peace in magisterial district No. 8 by a majority of 16 votes, so, by the judgment rendered he was given the office and appellant directed to vacate and surrender it to him with all the records thereof. The contestee, Emsy Hackney, being dissatisfied with the judgment, has appealed.

The contest, aside from the charges of bribery, did not affect the election in Grapevine precinct, in which appellee received a majority of the votes cast, it being agreed by the parties that the votes as cast therein were properly certified by the election officers. The contest on the other grounds urged were wholly as to the election in Lick precinct, and in arriving at the conclusion set forth in the judgment the circuit court refused to sustain the charges of bribery made in the petition with respect to either precinct, expressing the opinion that the evidence in support thereof was not sufficient to affect the result of the election in either, and resting the judgment upon the ground that the votes cast in the Lick precinct had not been legally counted or certified by the election officers of that precinct and that the proper recount made by the commissioners in the presence of the court and by its direction, so reduced appellant's majority in that precinct as that it was overcome by appellee's majority in the Grapevine precinct, thereby giving the latter the majority in the magisterial district stated in the judgment and entitling him to the office in contest.

The irregularities and errors in the count and certification of the vote in Lick precinct, as made by the election officers thereof, as well as the manner in which the

recount of the votes of that precinct was made by the commissioners under the order and in the presence of the court, are fully shown by the following excerpt from the opinion and judgment of the court:

"The court finds from the evidence that the count was made by the officers in an irregular way, in this, the officers testify that they divided the vote or ballots into different piles and two of the officers counted a given number of the ballots while the other two counted by themselves. In this manner the vote seems to have been canvassed and the result ascertained by adding the figures together, found by the respective counters, the officers not knowing, except as reported to each other, what the actual vote did show. A motion having been for a recount and proof having been heard as to the integrity of the ballots, same were opened in the presence of the parties and counsel on both sides; and the Court on his own motion appointed F. T. Hatcher, George Pinson, Jr.., each of said parties being personally known to the court to be well qualified to perform said service, and appointed for the purpose of representing the Democratic candidate, James A. Justice; and the court on his own motion appointed Ex-County Attorney C. C. Bowles, and Dr. J. D. Meade to represent the Republican candidate party in said count, each of the parties so appointed being personally known to the court as eminently fitted to perform said service, and all four of the parties so appointed being known to the court as men of good ability, and the court upon an inspection of the ballots in the presence of the commissioners and the parties, being satisfied that the ballots had been well preserved, ordered said commissioners to recount said ballots, which was done in open court and in the presence of all concerned. The commissioners in the presence of the court carefully examined each of the ballots and found the following result: That contestant Justice received 139 votes; that contestee Hackney received 164 votes. The stub book from said precinct and certificate of the officers were examined as part of the record in open court and the certified result by the officers of the election showed that the contestant received 116 votes and contestee 200 votes. The stub book further showed that only 312 persons voted in said precinct, whereas, the officers certify that 316 persons voted between contestant and contestee. The ballots, as shown in the recount

by the commissioners, show that 308 ballots were cast between contestant and contestee. The commissioners further found that five other persons had voted, as shown by the ballots, four of whom had voted for contestee and one for contestant, but the name of the election clerk not being signed thereon, the same were not counted by the commissioners; but the court is of the opinion that the ballots should be counted and now counts same, because a voter has nothing to do with the preparation of his ballot, and the clerk by oversight or failure to sign his name thereon cannot disfranchise the voter. The five votes are separated from the other votes and placed in a large envelope and endorsed across the seal thereof by the commissioners in red ink, the court having counted four of said ballots for Hackney and one for Justice. The ballots, except in a few instances, all appear to have been voted with a stencil and did not have the slightest indication of having been changed in the least. The petition alleges that contestant received in Grapevine precinct No. 22, 147 votes, and contestee 103 votes, making a total vote in the two precincts of .287 for contestant, as shown by the recount and 271 for contestee, as shown by the recount, the answer admitting the correct number of votes in Grapevine precinct, which makes a majority for contestee, James A. Justice, of 16 votes."

The facts and conclusions stated in the above quotation from the opinion and judgment of the circuit court are well established by the evidence, and substantially the only ground relied on by appellant for a reversal of the judgment is that there should have been no recount of the ballots from Lick precinct, and this contention rests upon the claim that the evidence fails to show that the ballots were preserved as required by law. In our opinion the evidence furnishes no support to this contention. In the matter of stringing, binding and sealing the ballots and securely locking them with the tally sheet and ballot stubs in the ballot box, there was, upon the part of the election officers, a substantial compliance with the provisions of section 1482, Kentucky Statutes. It is true that none of the ballots, except five questioned or doubtful ones, which were passed on and properly counted by the court, were enclosed in an envelope as required by the section, *supra*, but this omission resulted, doubtless, from the failure of the

county clerk to furnish the election officers the required envelope or envelopes; and, as it was apparent from the court's inspection of the ballots that they had been regularly marked and cast by the voters, though improperly counted and certified by the election officers, and the testimony in open court of the election officers in Lick precinct, the sheriff, his deputies, the county clerk, in whose custody the ballot box was properly placed and kept, his deputies and others having apparent knowledge on the subject, showing that the ballot box had, from the time it was locked by the election officers until opened by the court, been securely locked and the ballots therein not handled or tampered with, it is manifest that in requiring a recount of the vote the court adopted the only method that could safely have been employed to properly determine whether appellant or appellee had been legally elected to the office of justice of the peace in Magisterial district No. 8.

The foregoing facts bring this contest within the rule thus stated in Edwards v. Logan, 114 Ky., 312, as follows:

"The rule may be stated to be that, where the ballots are preserved so that their identity is assured, they can be counted during the contest; and they are undoubtedly better evidence of the vote cast than the returns and should prevail where there is a difference. Hughes v. Holeman, 23 Or., 81; Owens v. State, 64 Tex., 500; People v. Holden, 28 Cal., 123. But before a recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns it should be proved satisfactorily that the ballots had not been tampered with since the election and that those offered in evidence are the identical ones cast."

In McEuen v. Carey, 123 Ky., 536, we on this subject also said:

"The rule in this State is firmly established that in an election contest the certificate of the precinct officers is prima facie evidence of the correctness of their count, but if the ballots themselves have been lawfully kept and are shown not to have been tampered with then they must prevail over the certificate. Bailey v. Hurst, 113 Ky., 699; Edwards v. Logan, 114 Ky., 312; Hamilton v. Young, 26 R., 447. * *. * It is insisted for appellant that great confidence should be placed in the count of the officers, because, as a whole, they were composed

both of Democrats and Republicans, and the challengers and inspectors of the respective parties were there and participated in the count, and it is hardly possible that these seven men could have been so egregiously mistaken in so many instances; and it must be confessed that there is great force in this claim. But, on the other hand, it must not be forgotten that in the count of the votes by the officers of the election all do not participate in every part of the count. Usually, as the evidence shows was done in this case, one officer calls off the ballots, and another, or others, tabulate them. It requires but little familiarity with the conduct of elections to realize how easy it is for mistakes to creep into the official count at the end of the day. In the first place, the officers have been on duty for many hours, and are usually weary with the duties of the day when the count commences. The judges are generally elderly men, selected for the wisdom which ought to come with age, and the count of the votes, as in the case at bar, usually takes place after dark. Often the light is poor, and under these circumstances it can readily be seen how easy it is for an old man, with dim eyes and a poor light, to overlook sporadic votes. It is conceded that, in races other than the one involved here, several mistakes were made in the count of the officers, so that it is apparent that they were not infallible; and admitting, as is done here, that they made a number of mistakes, we do not see why their count in the clerk's race should be deemed beyond the-possibility of error.''

In the instant case the recount of the ballots of the Lick precinct disclosed beyond doubt the errors made by the officers of election in their count of the same ballots at the close of the election, which errors were all committed against the appellee, as stated in the judgment of the circuit court. It is not necessary for us to declare that these errors were intentionally or fraudulently made by the election officers. On the contrary, we incline to the opinion that they were made by mistake, for the evidence shows that the count took place in a schoolhouse near the polling place, because a desk was required upon which to spread the ballots and tabulate the vote, and this work was done with a poor light. Moreover, it further appears from the evidence that the election officers counted the ballots in the manner stated in the judgment, that is, ''they divided the vote or ballots

into different piles, two of the officers counting a given number of ballots while the other two counted by themselves. In this manner the vote seems to have been canvassed and the result ascertained by adding the figures together, found by the respective counters, the officers not knowing, except as reported to each other, what the actual vote did show.'' Under such circumstances it is hardly possible that the count could have been correctly made.

The irregularities and mistakes shown by the evidence to have attended the performance of the duties imposed upon the election officers in counting the votes cast in the Lick precinct, certifying the result and returning the ballots, did not vitiate the election in that precinct, and, being of such character as to be corrected by the recount of the ballots in the manner adopted by the circuit court, no reason is perceived for disturbing the result of that court's action. Substantial compliance by election officers with the requirements of the statute is all that is necessary; mere irregularity on their part will not give cause for setting aside the election. Craig v. Spitzer, 140 Ky., 465; Anderson v. Winfree, 85 Ky., 597; Cowan v. Prowse, 93 Ky., 156.

We deem it unnecessary to determine how many votes were received by appellant through bribery, for appellee's right to the office in contest must have been declared if none of the votes cast for appellant had been secured by bribery, because of his having received a majority of the legal votes cast in magisterial district No. 8. But lest it be thought we look with complacency upon the offense of bribery, we deem it proper to say that the evidence conclusively shows that a very considerable sum of money was spent in the election in procuring votes for appellant. The evidence does not directly connect him with the purchasing of these votes; but they were purchased in his behalf by his friends, who, according to the evidence, placed that matter under the management of one Arthur Charles, who was brought from Virginia, and furnished the money for that purpose. We think it manifest from the evidence that at least as many votes were purchased for appellant and cast for him as the petition alleges he thus received. On the other hand, it should be said to the credit of appellee that the evidence fails to show that any of the votes cast for him were secured through bribery. We cannot, however, declare the

election void because of the purchase of votes for appellant, as to do so would deprive appellee of the office in contest notwithstanding his election thereto by unpurchased votes.  He. was not a party to nor beneficiary of any of the bribery committed, and for that reason, and, because of the further fact, that he received a clear majority of the legal votes cast, exclusive of those of any persons bribed, the result of the election as far as he was concerned was not affected by the bribery.  As said in Motley v. Wilson, 26 R., 1011:

"The policy of the law is to sustain elections.  All of our rights, however, reach back to and are based upon a free ballot, because the sovereignty is in the people.  If the source becomes muddy what flows from it will also be contaminated.  Hence it follows that whenever fraud or bribery so far enters into an election that it is impossible to tell who has been elected by the legal votes, it is not to be upheld."  Ford v. Hopkins, etc., 141 Ky., 181.

After all, it lies with the grand juries and courts of the counties in which fraud and bribery in elections are committed to deal with and destroy these evils; and it is to be hoped that the bribery shown in this case to have been committed in the election of 1913 in magisterial district 8 in Pike County, will receive due investigation at the hands of these instrumentalities of the law, in order that the guilty parties may be brought to punishment.

Judgment affirmed.  Whole court sitting.