## Powell v. Horn; Same v. Broaddus.

## West v. Alexander.

(Decided June 19, 1914.)

## Appeals from Estill Circuit Court.

1. Elections—Contested Elections—When Pleadings Must Be Filed—Statute Mandatory—Exceptions.—Section 1596a of the statutes provides that the answer must be filed within 20 days after the service of summons, and the reply must be filed ten days after the answer is filed. Under this statute an answer or reply not filed in time should be stricken from the record, unless it affirmatively appears that a good excuse existed for the delay in filing the pleadings.

2. Elections—Contested Elections—Answer and Reply—What Will Excuse Failure to File Within Statutory Time.—If an answer is filed very soon after it is due and it affirmatively appears that a good excuse for the delay exists, arising out of unusual or extraordinary conditions appearing in the record, or due to accident or surprise which ordinary prudence could not have guarded against, or resulting from unavoidable casualty or misfortune, and also that the substantial rights of the adverse party were not prejudiced by the delay, the matter of allowing or refusing to permit the pleading to be filed is within the sound discretion of the trial judge. But nothing short of an excuse resting on one of these grounds will be available or deemed sufficient to avoid the statute.

3. Elections—Contested Elections—When Trial Court May Open Ballot Boxes and Count Ballots.—A party who desires to have ballot boxes opened and ballots counted upon the hearing of an election contest, must tender in connection with his motion evidence that the boxes have been carefully and properly preserved and not tampered with since their return by the officers of the election. This evidence may be offered either in the form of depositions or by witnesses that the court may permit to testify orally, preserving in the form of a bill of exceptions their testimony. When it is shown in this manner that the boxes have not been tampered with, the court should open and recount the ballots, if it appears that the ballots have not been tampered with or mutilated since their return by the election officers.

CLARENCE MILLER, G. W. GOURLEY and O'REAR & WILLIAMS for appellants.

R. R. FRIEND, PENDLETON, BUSH & BUSH and R. W. SMITH for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

These three appeals, prosecuted on the same record, are election contests from the county of Estill, involving the offices of county clerk, sheriff and jailer.

At the November election, 1913, Ancil Powell was the Republican candidate for jailer and John Horn his Democratic opponent. G. W. Powell was the Republican candidate for sheriff and William Broaddus was his Democratic opponent. J. E. Alexander was the Democratic candidate for county clerk and R. E. West was the Republican candidate. The election commissioners, when they first assembled to canvass the returns, refused to count the votes in Riddell precinct, a Democratic stronghold, and, as the result of this, the Republican candidates had a majority of the votes, and accordingly certificates were issued by the commissioners to all of the Republican candidates for county offices. After this and on December 13th, the commissioners reassembled, and the vote in Riddell precinct was counted by them as directed in Riddell v. Grinstead, 156 Ky., 319, and thereupon the vote, in respect to the parties to this contest, was ascertained by the election commissioners to be as follows: In the county clerk's race, J. E. Alexander, Democrat, received 1224 votes and R. E. West, Republican, 1220 votes; in the sheriff's race, William Broaddus, Democrat, received 1231 votes and G. W. Powell, Republican 1231 votes; in the jailer's race, Ancel Powell, Republican, received 1227 votes and John Horn, Democrat, 1226 votes. As the vote between Broaddus and Powell was a tie, the contest was settled by lot, Powell, Republican, winning.

Certificates of election were then issued by the commissioners to Alexander, G. W. Powell and Ancil Powell. After these certificates had been issued, Broaddus brought a suit contesting the election of G. W. Powell, West brought a suit contesting the election of Alexander, and Horn brought a suit contesting the election of Ancil Powell. Upon a trial of these contests, in the circuit court, it was adjudged that Alexander, Broaddus and Horn were elected, and this appeal is prosecuted by West, G. W. Powell and Ancil Powell.

Before taking up what may be called the merits of the case, we will dispose of the question raised by counsel for G. W. Powell and Ancil Powell, that as replies were not filed by Broaddus and Horn within the time allowed, the counter-contests asserted by G. W. Powell and Ancil

Powell should be treated as confessed, and therefore on the pleadings they were entitled to the certificates.

A brief history of the course of these cases will aid in the solution of this question. It appears that on the 17th day of November, 1913, Alexander, Democrat, as plaintiff, filed his contest suit against West, Republican, and Broaddus, Democrat, filed his contest suit against G. W. Powell, Republican, and John Horn, Democrat, filed his contest suit against Ancil Powell, Republican. These suits were each filed before the vote in Riddell precinct had been counted. The answer and counter-contest of each of the defendants were filed on November 27, 1913. On December 6th the plaintiffs in each case filed a reply to the answer in each case.

All these pleadings were filed before the election commissioners re-assembled on December 13th, as directed in the case of Riddell v. Grinstead, and issued new certificates of election. When these new certificates were issued, the effect of course was the cancellation of the first certificates and this necessarily abated the contests based on the first certificates. After the certificates of December 13th were issued, West, the Republican candidate for clerk, on December 20th, filed his contest suit against Alexander, and on January 10th, Alexander filed his answer and counter-contest, and on January 17th, West filed his reply.

On January third, Broaddus, the Democratic candidate for sheriff, filed his contest suit against G. W. Powell, and on January 22nd, G. W. Powell filed his answer and counter contest. On February 2nd, Broaddus filed his reply, which was merely a traverse of the affirmative averments of the answer and counter-contest of Powell. On December 22nd, Horn, the Democratic candidate for jailer, filed his contest suit against Ancil Powell, and on January 17, 1914, Powell filed his answer and counter-contest, and on February 2nd, Horn filed his reply, which was merely a traverse of the averments of the answer and counter-contest.

When the court convened in April, 1914, G. W. Powell moved the court to strike from the record the reply filed by Broaddus on February 2nd, because it was filed more than ten days after the day on which the answer and counter-contest had been filed; and further moved that the allegations of his answer and grounds of contest be taken as confessed. On the same day Ancil Powell moved

the court to strike from the record the reply filed by Horn on February 2nd, because it was filed more than ten days after the day on which the answer and counter-contest were filed; and further moved the court that the allegations of his answer and counter-contest be taken as confessed. But each of these motions was overruled by the trial court.

It is provided in subsection 12 of section 1596a of the Kentucky Statutes, that "within twenty days after the service of summons upon him the contestee shall file his answer, which may consist of a denial of the averments of the petition and may also set up grounds of contest against the contestant, and if grounds are so set up they shall be especially pointed out and none other shall thereafterward be relied upon by said party. A reply may be filed within ten days after the answer or answers are filed, but its affirmative allegations shall be treated as controverted, and no subsequent pleading allowed, and the action shall proceed as an equity action."

If this statute is mandatory and strict compliance with it indispensable the motions to strike the replies from the record should have been sustained, because the reply of Broaddus was filed one day after the ten days had expired and the reply of Horn six days after the ten days had expired.

In Preston v. Price, 24 Ky. L. R., 1090, the answer and counter-contest were filed on December 9th and a reply was filed on December 19th, one day after the ten days allowed by the statute had expired, and on motion of the contestee the reply was stricken from the record. In resisting the motion to strike the reply from the record, affidavits were filed attempting to excuse the delay, but these affidavits, as stated by the court, did not present any reasonable or sufficient ground to excuse the delay. And in holding that the court did not commit error in striking the reply from the record this court said:

"We are not called upon to decide whether for good cause shown, or for unavoidable casualty or misfortune, the time prescribed by the statute for filing a reply in an election case might be extended for no such state of case is shown. The whole statute, so far as it relates to contested election cases, shows the legislative intent to be that such contests should be railroaded through the courts, to the end that if the contestant should succeed

in his contest he might do so in time for his success to be of benefit to himself, and possibly to the public. We are of the opinion, therefore, that the time specified within which a reply may be filed is mandatory, to the extent of requiring it to be filed within the time named, unless good cause be shown."

In Allen v. Brown, 144 Ky., 414, the answer was filed more than twenty days after the petition had been filed. But the motion of the plaintiff to strike the answer from the record because not filed in time was overruled by the lower court. In considering this ruling of the lower court we said, after referring with approval to the excerpt *supra,* from Preston v. Price, that "Conceding for the purpose of this case, that the answer could be filed in a case like this after twenty days have expired, and thus violate the plain provisions of the statutes, we are of the opinion that the excuse offered for not filing in the time stated in the statutes is not sufficient. The provisions of the Civil Code with reference to filing of pleadings have nothing to do with this case. The statutes make specific provisions for the filing of pleadings in contested election cases and it does not provide that any excuse shall avail." But further said that "The excuse for not filing the answer within the time required was not sufficient."

In Weller v. Muenninghoff, 155 Ky., 77, the question of the right to permit a pleading to be filed after the expiration of the statutory time was again considered, but the point here involved was not decided.

The Legislature, in providing for the contest of elections, recognized the importance of having this class of cases speedily disposed of, and the liberal rules of pleading that obtain in ordinary cases should not be applied to contested election suits. These contested election cases have been put by the statute in a class by themselves, and all of the statutory requirements in respect to them must be substantially complied with; but notwithstanding the mandatory nature of the statute, this court has never committed itself to the doctrine that it is indispensable in every case and under all circumstances that the answer and reply shall be filed within the statutory time, or to the doctrine that no excuse, however reasonable or sufficient it may be, will operate to extend the time within which these pleadings may be filed. It has, however, decided in effect, and we think correctly, that when an

answer or reply is offered to be filed after the statutory period has expired, it should be accompanied by affidavits or other proof showing good reasons why the pleading was not filed in proper time, for unless a good excuse is shown, the statute is peremptory and must be complied with. If, however, the answer or reply is filed very soon after it is due, and it affirmatively appears that a good excuse for the delay existed, arising out of unusual or extraordinary conditions appearing in the record as in this case, or due to accident or surprise which ordinary prudence could not have guarded against, or resulting from unavoidable casualty or misfortune, and also that the substantial rights of the adverse party were not prejudiced by the delay, we think the matter of allowing or refusing to permit the pleading to be filed is within the sound discretion of the trial court. But nothing short of an excuse resting on one of these grounds will be available or deemed sufficient to avoid the statute.

The question, therefore, is, was the excuse for not filing these replies in time sufficient? This record presents a most curious and unusual state of facts. There were two sets of contest suits between the same parties for the same offices. The first set of these suits was filed after the first certificates were issued by the election commissioners, and the second set of suits was filed after the second certificates had been issued by the commissioners. The grounds of contest and counter-contest in each of these cases were substantially the same. In the first set of suits the pleadings, which consist of petitions, answers and replies, were made up in time and these pleadings furnished to each of the parties full information of the grounds of contest that were relied on in the second set of suits. It is true that in the first set of suits the three Democrats were the contestants and the three Republicans the contestees, and that in the second set of suits two of the Democrats and one of the Republicans were the contestants. But this situation did not make any material difference, because the grounds of contest and counter-contest in the first and second sets of suits were practically the same.

It further appears from the record that the parties commenced taking depositions on January 2nd, and that a great many of the numerous depositions, taken by both parties to be read and that were read on the trial, were taken before the answers in the second contest

suits were due or were filed, and of course before the replies in any of these cases were due. Indeed, the taking of depositions was commenced before the second contest petition of Broaddus was filed. The reason for this was that the parties were anxious to have the cases speedily disposed of and were fully advised as to the issues by the pleadings in the first set of contest cases.

As further illustrating that the parties understood the issues and really treated them as made up in the first contest suits, it was agreed by the parties on January 1, 1914, that "the plaintiffs shall begin taking their evidence January 1, 1914, and continue taking twenty-one juridical days, and the defendants shall then take for twenty-four juridical days their evidence. This applies to evidence in chief, and in the event either party concludes taking his evidence sooner than the time mentioned, the other party shall commence taking immediately upon the announcement of such conclusion, and each party agrees to announce as soon as finished in chief. The plaintiffs mentioned shall then have six juridical days in which to take their evidence in rebuttal."

In addition to this, the attorney for Broaddus and Horn filed a lengthy affidavit setting out additional reasons for the delay in filing these replies, but we do not hold that this affidavit in itself would be sufficient to excuse the delay. What we do hold is that under the unusual and extraordinary conditions appearing in the record, it was not an abuse of discretion to permit these pleadings to be filed.

Another complaint is of the action of the lower court in consolidating the first and second sets of contest suits. Of course the first contest suits have nothing to do with this contest. They should have been stricken from the files; but manifestly the order of the court in consolidating the cases did not prejudice the rights of the appellants except to the extent that it imposed on them the necessity of having the pleadings in this first set of contest suits copied as a part of the record for this court; nor was it error to consolidate and hear together the three last suits, as the evidence, except in a few particulars, covered all the cases.

It is further urged that the trial court committed error in refusing to recount the ballots in Miller's Creek and Thomas precinct on the motion of Ancil Powell, G. W. Powell and West. This motion, it appears, was made

in court on the tenth day of April, when the cases were called for trial, and the record shows that it was not accompanied by any offer to show the condition of these ballot boxes, or either of them, or the manner in which they had been preserved between the time of their delivery to the clerk in November, 1913, and the day the motion was made, although there was evidence in the record showing their condition between November 13th and February 20th.

In short, the whole of the record upon the subject of counting the ballots in these boxes merely shows that counsel for the parties named "moved the court to require the ballot boxes in Miller's Creek and Thomas precinct to be brought into court and opened, and that a recount of the ballots therein be had, to which counsel for the opponents of the parties so moving objected, and the motion being submitted and the court advised on the pleadings and proof in the record, overruled said motion, to which the parties making the same except."

This being the condition of the record, the question arises, did the parties making this motion present it in such a manner as to make available the alleged error of the trial court in refusing to count the ballots in these boxes?

Some time in February the evidence of the county clerk, as well as that of the circuit clerk, into whose custody these boxes had been delivered by the county clerk, was taken to show the condition of these boxes and the manner in which they were kept between the time of their delivery to the county clerk by the officers of election and the time the depositions of these clerks were taken, but there was no evidence offered, and there is none in the record, to show the condition of these boxes or how they were preserved between the time when the depositions of these clerks were taken and the motion to open the boxes was made.

It does, however, appear that while these boxes and the other election boxes were in the custody of the county clerk, the room in which they were kept was entered by some person or persons, without the knowledge or consent of the county clerk, and one of the ballot boxes stolen and carried away from the office; and it further appears that while these boxes were in the custody of the circuit clerk, the room in which they were kept was unlawfully entered by some persons, without the knowledge or con-

sent of the circuit clerk. These undisputed facts showing that persons who would tamper with, mutilate or destroy ballots or boxes had access to the place in which these boxes and ballots were kept, made it especially incumbent upon the parties tendering them as evidence to offer some proof that the boxes tendered had not been disturbed, and we think their failure to do so fully justified the trial judge in not opening these boxes and recounting the ballots.

In the contested election case of Browning v. Lovitt, 139 Ky., 480, it was said upon this subject: "When the box of this precinct was produced, before the court, it showed that it was not in the condition that the law requires, as one lock was gone entirely; but aside from the condition of the box an inspection of the ballots which have been brought to this court makes it plain that an election thief had been at work. * * * When a recount is demanded and made, if the box appears to have been opened since its delivery to the clerk by the officers of the election, or if the ballots show evidence of having been tampered with, the court should reject them and accept the certificate of the officers of the election as the correct vote in the precinct.

"In this connection a question of practice is presented that should be disposed of. For the purpose of showing the condition of the box and ballots at the time of the recount, the contestants during the hearing before the lower court, introduced witnesses to testify as to the condition of the boxes and ballots when they were brought before the court and opened, and this testimony is exhibited in the form of a bill of exceptions duly signed by the judge. The appellees insist that this evidence cannot be considered because the Kentucky Statutes, section 1596a, in providing how elections shall be contested, specifies the manner in which evidence shall be taken and makes no provision for the hearing of oral evidence by the court. Unless, however, oral evidence is permitted to be introduced at the time as to the condition of the box and ballots when they are before the court, it would not be possible for this court to understand the condition of them if the box and ballots were not brought here, and if ordered here and lost or tampered with in transit, there would be no evidence on appeal of their condition at the time of the recount, unless the court saw proper to embody in the record a statement of fact as to their condition. We think, therefore, that it is proper

for either party to intrdouce before the court, during the hearing, witnesses who in the presence of the court and the parties have examined the box and ballots to testify as to their condition, and this evidence should be manifested in the form of a bill of exceptions regularly signed by the judge, and when brought to this court this evidence, in connection with the box and ballots, if sent here, will be considered by this court.''

In Baker v. Dinsmore, 138 Ky., 277, it appears that Dinsmore asked that a ballot box be opened and the ballots be recounted, to which Baker objected. The court overruled his objection and ordered the box to be brought into court, unlocked the box, took out the ballots, and recounted them. In holding that the ballots in this box should not have been counted, we said:

''The lower court had no legal right to open the ballot box and recount the ballots over the objections of appellant until it was satisfactorily proved that the ballot box had been kept as required by the statutes, that the ballots had not been tampered with since the election, and that the ballots offered in evidence were the identical ones cast. Under the authority of Edwards v. Logan, 114 Ky., 312, this is indispensable. The record is silent upon this question. In other words, the record does not show that these requirements were observed before the delivery of the box containing the ballots counted to the court; nor does it show anything with reference to the condition of the box or the preservation of the ballots, or whether the ballots were found in the box in the condition which the law requires the election officers to put them in. In the case of Edwards v. Logan, *supra,* the court said: 'But, before a recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots had not been tampered with since the election, and that those offered in evidence are the identical ones cast. * * * That presumption of the integrity of the ballots cannot attach, however, until it is first shown that they came from the officer whose duty it is by law to have and preserve them, and that they are apparently in the condition of preservation prescribed by the statute.' We understand from this opinion that these facts must be shown by the party seeking to have the court open the box and recount the ballots, and that it cannot be done until this much is shown. When this is done in order to prevent the ballots from being recounted, the other party must

show that the ballots have been tampered with, or that access has been had to them by persons not authorized by law. As there is no proof in the record that the ballots came from the officer whose duty it was under the law to have and preserve them, that they had been so kept since the election, and that they were apparently in the condition of preservation prescribed by statute, without this showing of the integrity of the ballots, they were not of equal dignity as evidence of the result of the election as the certificate of the election officers. See the case of Edwards v. Logan, *supra.* Therefore we are of the opinion that the court erred in counting the ballots in the box over the objections of appellant's counsel.'' To the same effect are: Hackney v. Justice, 159 Ky., 167; Hamilton v. Young, 26 Ky. L. R., 447; Galloway v. Bradburn, 119 Ky., 49; Bailey v. Hurst, 24 Ky. L. R., 504.

These cases we think establish very clearly that the party who desires to have ballot boxes opened and ballots counted, on the hearing of an election contest, must tender, in connection with his motion, evidence that the boxes have been carefully and properly preserved and not tampered with since their return by the officers of the election. This evidence may be offered either in the form of depositions or by witnesses that the court may permit to testify orally, preserving in the form of a bill of exceptions their testimony, if it is taken on a hearing of the case. When it is shown in this manner that the boxes have not been tampered with, the court should open and count the ballots, if it appears that the ballots have not been tampered with or mutilated since their return by the election officers.

Coming now to consider the facts in relation to illegal votes alleged to have been cast and counted for both contestants and contestees, it appears to be admitted in the brief of counsel for the appellants that 43 illegal votes were cast for them, and it appears to be admitted in the brief of counsel for the appellees that 48 illegal votes were cast for them. In addition to these admitted illegal votes, a number of votes were contested by both appellees and appellants upon the ground that they had been voted openly, without the voters being sworn, or that they were non-residents, or minors, or had been convicted of a felony and not pardoned. The evidence relating to all of these challenged votes was carefully read and considered by three members of this court, who acted to-

gether in examining the record, and our conclusion is that in addition to the admitted illegal votes cast for appellants, 12 other illegal votes were cast and counted for them, making the total illegal votes for the appellants 55. And that in addition to the admitted illegal votes cast for the appellees, they received three illegal votes, thus making the total number of illegal votes received by appellees 51.

According to this tabulation in the sheriff's race, where each of the candidates received, as shown by the election returns, 1231 votes, the appellee, Broaddus, for sheriff has a majority of four votes over his opponet, G. W. Powell. In the clerk's race, the appellee, Alexander, received 1224 votes and the appellant, West, 1220 votes. Deducting from the vote received by Alexander 51 votes, and from the vote received by West 55 votes, Alexander has a majority of 8. In the jailer's race the appellee Horn received 1226 votes and the appellant Powell 1227. Deducting from the votes received by Horn 51 votes and from the votes received by Powell 55 votes, Horn has a majority of 3.

We took off of the Republican votes, in addition to the admitted votes, Gilbert Holland, Charles Holland, Albert Powell, Elihu Tipton, Homer Wallace, Dan Barnes, John Dozier, Elza Wells, Andy Lutes, Price Powell, Erby Bicknell and Van Horn. From the Democratic votes we deducted the votes of the following persons as illegal; Joseph Hinds, Pete King and W. H. Hyden. In addition to these the votes of Oscar Ballard, Jake Hughes and Buck Johnson, who voted for appellants, were challenged. It is extremely doubtful if these men were legal voters, but as their votes did not affect the result, we let them stand as they were cast.

The evidence as to these 15 named illegal voters is quite voluminous and in some instances very conflicting. But it would serve no useful purpose to extend this opinion in discussing the reasons that influenced us in rejecting the votes. It is, we think, sufficient to say that we have given to this large record unusually careful and painstaking attention, and our conclusion was reached only after all the evidence relating to these voters had been carefully read.

Upon the whole record, we think the judgment in each case should be affirmed, and it is so ordered.