## Hicks v. Kimbro.

(Decided September 29, 1925.)

Appeal from Hickman Circuit Court.

1. Elections—Ballots May be Recounted to Rebut Presumption of Correctness of Returns on Contest Only when they have been Preserved so that Identity is Assured.—Where ballots are preserved so that their identity is assured, they can be recounted during contest, but before recount of ballots should be allowed to rebut presumption of correctness of official returns, it should be

proved satisfactorily that ballots had not been tampered with
since the election and are identical ones cast.

2.  Elections—Evidence Held Insufficient to Show Ballots Preserved
    so as to Assure Identity that would Warrant Recount.—Where,
    in election contest, it is shown that seal and supplies had re-
    mained in ballot box, and that county court clerk had kept the
    keys in unlocked drawer, that place where ballot boxes were
    placed was easily accessible, and that boxes had been rearranged,
    held, the court properly refused recount, as genuineness of the
    ballots was not sufficiently proved to authorize the court to accept
    them as better evidence than official return.

W. J. WEBB for appellant.

F. B. MARTIN, L. L. HINDMAN and J. D. VIA for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

At the primary election held August 1, 1925, appel-
lant, H. E. Hicks, and appellee, Lonie Kimbro, were can-
didates for the Democratic nomination for sheriff of
Hickman county, Kentucky. As shown on the face of the
returns appellee received 37 votes more than appellant
did and he was awarded the certificate of nomination.
Thereafter and within the time fixed by law appellant in-
stituted a contest for the nomination upon the sole ground
that by fraud or mistake the election officers in the vari-
ous precincts of the county failed to count and certify for
him all the votes received by him and did count and cer-
tify for contestee more votes than he had received. The
sole purpose of this contest was to obtain a recount of the
ballots, and the grounds of contest were sufficient for that
purpose. The contestee answered denying the allega-
tions of the petition, and by way of counter contest chal-
lenged as illegal and void certain named votes received
by contestant. The answer was traversed, and, upon the
issues thus made, the proceeding came on for trial before
the Hickman circuit court, the evidence being heard orally
by consent and being reported by the court stenographer.
After hearing the evidence introduced pro and con as to
the preservation of the integrity of the ballots, the trial
court overruled contestant's motion to open the ballot
boxes and recount the ballots, and entered judgment dis-
missing the contest. This appeal is prosecuted from that
judgment and it presents the question as to the correct-
ness of the court's ruling on the contestant's motion to
open and recount the ballots cast in the race for the Dem-

ocratic nomination for sheriff at the primary election held August 1, 1925, in Hickman county, Kentucky.

The following excerpts from Edwards v. Logan, 114 Ky. 312, declare the rules of this court upon the question:

"The rule may be stated to be that, where the ballots are preserved so that their identity is assured, they can be counted during a contest; and they are undoubtedly better evidence of the vote cast than the returns, and should prevail where there is a difference. But before a recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots had not been tampered with since the election, and that those offered in evidence are the identical ones cast. . . . Every consideration of public policy, as well as the ordinary rules of evidence, require that the party offering this evidence should establish the fact that the ballots are genuine. It is not sufficient that the mere probability of security is proved, but the fact must be shown with a reasonable degree of certainty. If the boxes have been rigorously preserved, the ballots are the best and highest evidence, but, if not, they are not only the weakest, but the most dangerous evidence."

After citing a number of authorities, the court further said:

"From these authorities this court holds: That the ballots cast in an election are the primary and best evidence of the voters' will as expressed therein, and that in case of a contest, as between the certificates of the officers of election and the ballots, the ballots are the best evidence, but that this is conditioned strictly upon the fact that the integrity of the ballots is clearly established; otherwise the certificate of the officers of election should prevail. That when the ballots are produced from the custody of the officer whose duty it is to preserve them, are shown to have been preserved from intermeddling from unauthorized persons, and are apparently unchanged, they will be received as evidence of what they may show upon their face; but where they may have apparently been tampered with, or where opportunities have been afforded to unauthorized persons, or to persons interested to tamper with them,

then the burden is upon the party producing and relying upon such ballots to establish their integrity clearly and satisfactorily by the evidence." (See also Hamilton v. Young, 26 Ky. L. R. 447; Galloway v. Bradburn, 119 Ky. 49; Scholl v. Bell, 125 Ky. 750; Browning v. Lovett, 139 Ky. 480; Baker v. Dinsmore, 138 Ky. 277; Powell v. Horn, 159 Ky. 532; Snowden v. Flanery, 159 Ky. 568; McEuen v. Carey, 123 Ky. 536; and Thomas v. Marshall, 160 Ky. 168.)

The uncontradicted evidence heard in this case discloses that the keys to the ballot boxes for fourteen out of sixteen precincts in Hickman county at the election in question were retained by the county court clerk when the boxes were delivered to that office after the election instead of being delivered as the law requires, one to the judge and one to the sheriff of the election who delivered the box to the county court clerk. It appears that the keys thus retained by the county court clerk were placed in a small box and deposited in a desk drawer in the clerk's office on the Saturday night of the election. The desk drawer appears to have been locked and the key carried by the clerk. However, in another drawer in the desk which was not locked it appears that there were a great number of keys from which the keys for the locks on the ballot boxes had been selected on the occasion of this election and from which, according to the evidence, keys doubtless could have been obtained to open any and all of the locks of the ballot boxes. When the ballot boxes were returned to the clerk's office by the election officers it appears that they contained not only the ballots but all of the election supplies, including the election seals. Instead of opening the boxes as delivered to ascertain that the ballots were intact and properly sealed and to remove from the ballot boxes everything save the ballots required by law to be preserved therein, none of the ballot boxes were opened and no examination of them was made, although the receipts required by law were given to the election officrs signed by the county court clerk certifying that all those things had been done. Instead of delivering the election seal for the respective precincts to the judge of the election who aided in delivering its ballot box to the county court clerk, as is required by law, the seal of each precinct was left in its box, as were left also the unused supplies of sealing wax, the needle with which the ballots were strung and all the other election

supplies. The evidence discloses that on Saturday night of the election fourteen of the sixteen ballot boxes of the county were returned to the county court clerk's office. It satisfactorily establishes that before leaving the office for the night and about twelve or twelve-thirty o'clock, the county court clerk, assisted by the sheriff of the county and one or two others, stacked those fourteen ballot boxes upon each other against the north wall of the clerk's office. The sheriff's testimony was so explicit as to state that after doing so he struck matches and read the names of the various precincts on the boxes and in that way checked up to know that the fourteen boxes that had then been returned were placed in the stack against the north wall of the room. The door of the clerk's office appears to be a double steel door, the outer door being equipped with a combination lock, the inner with a key lock. The testimony discloses, however, that the combination lock has been out of order and unused for many years and was not used or locked any time after the return of the ballot boxes to the clerk's office. It appears that the county court clerk, one of her deputies and the jailer of the county possess keys that open the lock on the inner door of the clerk's office. It appears that the windows of the clerk's office are equipped with steel shutters, but that they had been unused for some time and that they were not fastened for several days after the election. The trial court examined the windows and window locks of the clerk's office and describes his findings as follows: "I found that when the window sash locks were locked that on account of their size and nature they pressed the upper part of the lower sash and the lower part of the upper sash apart so that a thick rule could be inserted flatwise between them at that point, and upon measuring the space between the sash it was over a quarter of an inch between them. I did not go upon the outside to attempt to spring the locks." The court in his findings of fact recited that an examination of the ballot boxes disclosed no indication on the boxes themselves that they had been tampered with. The following quotation from the trial court's findings of fact is a fair statement of the evidence on the question:

> "On Monday or Tuesday afternoon, following Saturday's election, the contestant, Hicks, and his supporter, Eli Hodge, and Edward Hodge, a son of Eli, called at the home of Mrs. Flatt (the county

court clerk), for a consultation with her son, Jimmie (20 years old and her office deputy), but there being a number of persons present at the home, young Hodge carried Jimmie in his car out about half a mile upon the highway to an overhead bridge, where they had been preceded by the contestant, Hicks, and Eli Hodge, a former sheriff of the county. All four of them testified that the conversation lasted not more than 10 or 15 minutes, and that it was for the purpose of asking Jimmie if he had sworn certain election officials before they served. Jimmie was then carried back home, where he was let out, and the others proceeded on their way.''

It was proved by the jailer of Hickman county that on Sunday afternoon following the election on Saturday, he went into the office of the county court clerk to clean it up and that when he entered the office he found twelve of the ballot boxes in the stack against the north wall and two elsewhere, one being on one of the desks in the office and the other on the floor under one of the tables.

The trial court held under these facts that the evidence disclosed ample opportunity afforded to unauthorized persons and to persons interested to tamper with the ballots, and that the fact that two of the boxes that had been left stacked against the north wall of the office Saturday night were found Sunday afternoon removed from the place where they had been left established that the ballots apparently had been tampered with; that, therefore, the evidence did not disclose that the ballots had been preserved so as to insure their identity and integrity. The court below, therefore, declined to open the boxes and count the ballots or accept them as evidence to rebut the presumption of the correctness of the official returns. The correctness of that ruling is the question before this court.

Our entire plan and method of holding elections, both primary and general, and all the legislation enacted to provide the method by which such elections are conducted have for their chief aim the end that they may be free and fair and equal; that the voters may freely express their will by their ballots, that the ballots shall be counted as cast and certified as counted and nominations and elections awarded according to the will of the people. In order that no one may improperly or unduly influence the voter, it is provided that he shall cast his

ballot in secret. If the provisions of our laws are observed no one may know for whom a voter has cast his ballot. The law with great pains and much particularity has provided that at the count of the ballots all candidates may be represented in an effort to guarantee that the vote is counted and certified as cast. As a further check against fraud or mistake in counting and certifying the vote, the statutes provide a particular method by which the ballots themselves are preserved so that they may be resorted to in contests over elections or nominations upon a proper showing that the count and certification as made by the election officers either fraudulently or by mistake is incorrect. The ballots are required to be strung on a string, to be rolled or folded together, the string to encircle them both ways, to be tied in a double knot and the knot sealed with hot wax by using the county election seal. The ballots so sealed are then placed in a large envelope which is required to be sealed with the election seal by using hot wax, and the names of the officers of the election are required to be written across the flap of the envelope. The envelope is then placed in the ballot box locked with two locks, and it is required to be transported to the office of the county court clerk by the sheriff of the election and the judge of the election of the opposite political party. In order to insure that the foregoing precautions have been taken by the election officers, the law requires that when the boxes are delivered to the county court clerk he, in the presence of the two officers delivering them, shall open the boxes and inspect them. If true the clerk thereupon signs and delivers to the two election officers of the respective precincts a receipt certifying that his examination of the contents of the ballot boxes has disclosed that the envelope of ballots contained therein is safeguarded, as provided by law. Then, in order to insure that the identity and integrity of the ballots may be preserved, the ballot boxes containing the ballots are locked in the presence of the officers of the election and the keys to one lock are delivered to one of the officers of the election and the keys to the other lock to the other. In order further to protect the identity and integrity of the ballots the law requires that the election seal for that precinct be delivered to and be kept by the judge of the election. The wisdom of the law's requirements as to the disposition of the keys to the ballot boxes and the election seal becomes apparent when we consider that if the keys and seal were left in

the hands of the custodian of the ballot boxes, by using the keys the ballot boxes might be opened, the seals placed by the officers of the election on the string with which the ballots are bound and the envelope in which they are contained might be broken with impunity and replaced after any changes desired might have been made on the ballots. Under the safeguards thrown around the ballots by our statutes the cooperation of three must be obtained before the sanctity of the ballots may be violated.

The evidence in this case discloses that none of the safeguards provided by our statutes to guard the sanctity of the ballots were observed. The ballot boxes, the keys to their locks and the election seals were all left in and about the clerk's office. Any one acquiring access to the clerk's office had every opportunity to open the ballot boxes, to open the envelopes containing the ballots and to remove the string with which they were bound, to change as many ballots as needed to change the result of the election and then to rebind and reseal and reinclose them in the envelope and reseal it and lock the ballot box in exactly the same manner as those things had been done by the officers of the election, because they had possession of exactly the same implements and supplies used by the election officers in preparing the ballots originally to guard against their being tampered with. Three persons had keys to the door of the clerk's office. From the evidence as to the window locks and the space between the upper and lower sash of the windows, doubtless they could have been opened at will from the outside. In addition to these opportunities afforded for violating the identity and integrity of the ballots, the positive evidence was produced that between twelve o'clock Saturday night of the election and two o'clock the following day, when the jailer went into the clerk's office, some unauthorized person had removed two of the boxes from where they had been left the night before to another position in the clerk's office. It is certainly true that in this case the evidence established that opportunity was afforded to unauthorized persons or to persons interested to tamper with the ballots. Under the facts disclosed by this record, if the ballots as they then were had been opened and counted and the recount had changed the result as certified by the election officers so as to show appellant to have received more votes than appellee, as said in Edwards v. Logan, *supra,* before such recount "should be allowed to

rebut the presumption of the correctness of the official returns it should be proved satisfactorily that the ballots have not been tampered with since the election and that those offered in evidence are the identical ones cast. Every consideration of public policy as well as the rules of evidence require that the parties offering this evidence should establish the fact that the ballots are genuine.'' Since in this instance all the safeguards provided by our statutes for the preservation of the integrity and genuineness of the ballots were disregarded and every opportunity was offered to unauthorized and interested persons to change the ballots without being detected, it can not be said that, if the ballots had been opened and recounted and had changed the result so as to nominate contestant, they should be permitted to rebut the presumption of the correctness of the official returns. Hence, it can not be held that the trial court erred in overruling appellant's motion to recount the ballots herein. The genuineness, identity and integrity of the ballots as they were when appellant offered them as evidence were not sufficiently clearly proved to have authorized the court to permit them if they had changed the result to be accepted as better evidence of how the voters cast their suffrage at the election in question than the evidence of that fact furnished by the official returns of the election certified by the election officers and canvassed by the county board of election commissioners.

For the foregoing reasons the judgment herein is affirmed.